[No. 2,350.]

## JANE MELEY v. RICHARD N. COLLINS ET AL.

DELAY TO ATTACK FORGED DEED AS ESTOPPEL.—In an action to recover possession of land held by an innocent purchaser who deraigns title through a forged deed which has been of record five years with knowledge of the plaintiff, the delay of the plaintiff to attack the forged deed is not material if it be not relied upon as extinguishing the plaintiff's title by the operation of the statute of limitations; and such delay does not estop the plaintiff to say that the alleged deed is not his deed.

OBLIGATION OF OWNER AS TO HOSTILE TITLE.—The owner of property is justified in relying upon his title, and he is under no obligations to proceed against all persons who may assert a hostile title, although another person might be deceived by the apparent genuineness of such hostile title.

OBLIGATION OF OWNER AS TO FORGED DEED.—It is not the duty of the owner of real estate, if his own interests do not require it, to attack a forged deed to his property.

PROTECTION TO PURCHASER UNDER FORGED DEED.—A purchaser may protect himself from injury resulting from a forged deed by exacting the necessary covenants from the vendor.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*McAllister & Bergin*, for Appellant.

The charge of the Court and the instructions given at the request of the respondent, proceed upon an assumed estoppel arising out of the record of the forged deed, and we assume, as Court and counsel did on the trial, that the alleged deed of the appellant Meley to Gilbert was a forgery.

Does the recording of a forged deed of real estate work an estoppel upon the real owner in favor of an innocent purchaser for value? It would seem impossible to give but one answer to the question in whatever way we may regard it. View it in the light of the scope and language of the recording Act itself, and how does it stand? According to the rules of the common law there was no mode provided for or effect accorded to the recording of conveyances of real estate; every one was bound, at his peril, to ascertain all outstanding incumbrances or previous conveyances. *Caveat emptor.* To relieve against the inconveniences of this rule the statute has prescribed a mode for the recording of all conveyances or incumbrances on real estate, and declared that when thus properly recorded they shall be constructive notice to all persons of their contents, and all subsequent purchasers, mortgagees, or lien holders are deemed to purchase with notice thereof. The statute, however, expressly provides that the certificate of acknowledgment, record, etc., shall not be conclusive and may be rebutted. (Sec. 31.)

Made ex parte, as are acknowledgments and records of deeds, etc., it is unnecessary, in face of the express language of the statute, to inquire whether they could legally amount to any more than prima facie evidence of their contents; suffice it to say, the statute has declared they shall not be conclusive, but shall be open to rebuttal. The party must, therefore, at his peril, examine the records; he does so and finds the title of record clear, he takes his conveyance in due form; if he do not cause it to be duly recorded, a subsequent purchaser in good faith and for value, whose conveyance is first recorded, will secure priority of title. This

is a result to which he has contributed and for which he should suffer. He, however, duly records his deed. Is there any rule of law or justice that enjoins it as a duty on him to thereafter keep watch of the records of the County Recorder's office? He complied with all the requirements of the law, was diligent, and secured his title. Is ceaseless vigilance upon the records thereafter the price of his retaining it? Where is the justice or policy that would compel him to keep continuous watch of the records? Must he be equally vigilant and watchful of the records to keep, as to acquire a clear title to, his property? Is there any express statutory provision to this or any similar effect? Certainly none that we have been able to discover. (*Everts* v. *Agnes*, 4 Wis. 352, 6 Wis. 463; *Van Armage* v. *Miller*, 4 Whart. 382; *Arrison* v. *Harmstead*, 2 Barr, 195; *Smith* v. *South Royalton Bank*, 32 Verm. 353; *Berry* v. *Anderson*, 22 Ind. 40; *People* v. *Bostwick*, 32 N. Y. 445; *Ely* v. *Wilcox*, 20 Wis. 529; *Hooker* v. *Pierce*, 2 Hill, 650; *Connecticut* v. *Bradish*, 14 Mass. 296; *Trall* v. *Bigelow*, 16 Mass. 418; *Day* v. *Clark*, 25 Verm. 402.)

These authorities show that a party whose conveyance is duly recorded is not obliged to thereafter keep constant watch of the records, lest some party, without his consent or authority, should fraudulently or feloniously attempt to convey away his property. Nor are the instructions and charge of the Court any more tenable upon the doctrine of estoppel. It will be borne in mind that in the case at bar the deed was forged. The appellant never made it, nor knew of its contents till long afterward, nor authorized or consented to its being recorded. It was neither in law nor in fact her act or deed, and it is difficult to conceive how, under such circumstances, it can operate equitably to estop her. One of the most familiar and essential characteristics of an

estoppel *in pais* is, as laid down in the case already cited, that the declaration or admission be made with intent to influence the conduct of the party claiming the benefit of the estoppel, or those under or through whom he claims; and a no less essential and distinguishing feature of it is that the estoppel must be mutual and reciprocal. Strangers are not bound by and cannot invoke the benefit of an estoppel. (*Strong* v. *Strickland*, 32 Barb. 289; *Reynolds* v. *Loundsbury*, 6 Hill, 554; *Pennell* v. *Hinman*, 7 Barb. 649; *Carpenter* v. *Stilwell*, 1 Kern. 71–73; *Christianson* v. *Linford*, 3 Robertson N. Y. 224; 21 Ala. 424; 8 Gill, 239.)

There was here no statement, declaration, or act of the appellant, made to, or intended to influence the conduct of the respondent Collins, to whom she was an entire stranger, and therefore there can be no estoppel. Nor can the subsequent knowledge of the appellant, that there was a forged deed of record to her property, create such estoppel. Admitting that she subsequently learned this fact, she likewise knew that it was a forgery to which she never consented. She did nothing to authorize or justify the respondent in supposing that she ever adopted or sanctioned the forgery. She was guilty of no act, and did not omit performance of any duty toward him, by reason of which she can be estopped. There was no relation of trust or confidence between her and the respondent Collins, that devolved upon her the duty of procuring an adjudication of the forgery of this alleged conveyance. She had in all respects complied with the law; obtained a conveyance in due form, and of unquestionable validity, of these premises; had it duly recorded; and was entitled to rely upon the law for her protection. The only statement she ever made of record, upon which the public would be justified in relying, was legal and true—that she acquired title to the property from her grantor. We have sought in vain to discover any principle of law or equity upon which she can be estopped. Can the mere knowledge

of the existence of a forged deed of record to her property, and her failure to institute legal proceedings to have it declared a forgery, estop her in the face of the statute of frauds? The Court will bear in mind that this is not the case of actual, positive fraud, and it is obvious that if she can for these reasons be divested of her title to her property, the statute of frauds is not only virtually, but in effect, fully repealed. Here the appellant accidentally, after the forgery, learned it; but once admit that notice of it will devolve upon the party the duty of instituting judicial proceedings to declare such a forgery a nullity, under pain of forfeiting the title to his land, and it requires no prophet to foretell that the next step will be to hold that examination of the records would furnish the necessary means of ascertaining the existence of record of any forged title, and that, thus having the means of information, inquiry must be made, or the party will be chargeable with notice, and consequently bound to institute legal proceedings to have it adjudged void, or be forever estopped from asserting title; and it will readily be seen that, to protect the title to real estate, not only must the owner search the record in advance of his purchases, but he must constantly keep himself informed upon the subject, at the peril of being divested of his property in favor of some alleged innocent purchaser for value, without his act, knowledge, or consent, under a forged conveyance. We are free to confess that we have been unable to find any authority in support of such a principle of law. We can conceive of no view of law, justice, or public policy that will sanction it, and we submit that it is utterly inadmissible in the face of our statute of frauds, were there anything in such a principle itself to recommend it to our adoption.

If these views be correct, and of their correctness we cannot for a moment doubt, the instructions of the Court to the jury were erroneous, and the judgment must be reversed.

*Jarboe & Harrison,* for Respondent.

The instructions given at the request of the defendants, and the charge of the Court, correctly presented to the jury the law applicable to the facts developed on the trial. The position of the defendants is, that whether the plaintiff executed the deed to Gilbert or not, she by her acts so conducted with reference to the property in controversy, and so held Gilbert out to the world as the owner of the same, that she is estopped from setting up any right or claim thereto.

Respondent does not assume, as do counsel for appellant, that this deed was a forgery. On the contrary, he assumes and maintains, as he did at the trial, that it was the deed of Mrs. Meley, signed and executed by her. This was one of the questions litigated between the parties, and submitted to the jury for their determination. It was made a special subject of instruction to them by the Court. There was much testimony offered upon this point at the trial—conflicting testimony, too, and from which the jury would have been fully authorized to find in favor of the defendant.

But, irrespective of this question, we maintain that the appellant is, under the facts developed in the present case, estopped from asserting any claim to the land in controversy.

The appellant gravely propounds to the Court: " Does the recording of a forged deed of real estate make an estoppel upon the real owner in favor of an innocent purchaser for value?" Of course it does not. Respondent does not insist upon any such proposition, and all the argument and citation of authorities by the appellant upon this branch of his brief are inapplicable.

The question of estoppel could not arise under such a state of facts, unless it was the party himself who recorded the forged deed. In that case there would be some "act" or "admission" on the part of the party sought to be estopped, but in the case supposed by the appellant the party whose

deed was forged had nothing to do with the transaction on the recording of the instrument, and knew nothing about it until it was sought to be enforced against him.

Such a state of facts, and the argument based thereon, has no application to the question now before the Court, for the simple reason that there is not a particle of identity or parallelism between them. Throughout every line of the instructions given to the jury, in the present case, is the predominant idea that the plaintiff knew, was cognizant of, assented to, and acquiesced in the fact that there was a deed on record from herself to Gilbert, and that she also " consented " to let that deed remain on record, and thus held Gilbert out to the world and to the defendants as the owner of the land in question. It was only upon the condition that they found such to be the facts that they were instructed that the plaintiff had so conducted with reference thereto as to preclude her right to recover.

We insist that these instructions were correct, and that the plaintiff was estopped by her acts and negligence from asserting any claim to the land.

Appellant lays down as a proposition of law, and occupies considerable time in endeavoring to show, that a person, in order to be estopped by his acts or conduct, must have *intended* to influence the conduct of some one. We do not understand that such is the unqualified definition of an estoppel. It is true that that word is used in some of the cases as one of the elements necessary to create an estoppel. It is, in fact, so used by Justice COWAN, in the case of *Dezell* v. *Odell*, 3 Hill, 219, referred to and cited in *Davis* v. *Davis*, 26 Cal. 40, and which appellant has erroneously given in his brief as the language of this Court in the latter case.

It is also found in other cases in the same connection, but we conceive the meaning of the Court in them all to have reference to the objective result of the particular act, rather than to the motive of the person who performs the act. It

is not necessary that the person who is estopped should have exercised a particular volition, with reference to the effect to be produced by his act, but it is sufficient if the act has produced that effect independent of or even contrary to the actual volition of the person acting.

In nearly all the cases in which the "intention" is named as an element of the definition of estoppel, there is also found "carelessness" or "culpable negligence" as an equivalent. In *Biddle Boggs* v. *Merced Mining Company*, 14 Cal. 368, the Court gives as one of the elements of an estoppel "that he made the admission with the express intention to deceive, or with such careless or culpable negligence as to amount to constructive fraud." (Story's Eq., Sec. 385, et seq.; *Griggs* v. *Wells*, 10 Ad. & E. 97.)

The books are full of authorities to the effect that when one having title to real estate stands by and suffers another to purchase without making known his claim, he shall not afterwards be permitted to assert his claim against such person (*Wendell* v. *Van Renssalaer*, 1 John. Ch. 354; 2 Smith's Lead. Cases, 5th Am. ed. 660; *Storry* v. *Barker*, 6 John. Ch. 166; *Brewster* v. *Baker*, 16 Barb. 618; *Hicks* v. *Cram*, 17 Vt. 449); and "standing by" is held to mean not "actual presence," but such knowledge as under the circumstances makes it his duty to speak. (*State* v. *Holloway*, 8 Blackf. 47; *Thompson* v. *Blanchard*, 4 Comst. 309.)

In *Pickard* v. *Sears*, 6 Ad. & E. 469, the rule is laid down as follows: "When one by his word or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

"Willfully," in this connection, means "knowingly." (28 Me. 539; *Stephens* v. *Baird*, 9 Cow. 274; *Frost* v. *Saratoga Ins.*

*Co.*, 5 Denio, 154; *Plumb* v. *Cattaraugus Ins. Co.*, 18 N. Y. 392; *Wendell* v. *Van Renssalaer*, 1 John. Ch. 354.)

In none of these cases was there any "intention" developed on the part of the party acting, yet the Court held him estopped by his acts. (*Manufacturers' Bank* v. *Hazard*, 30 N. Y. 230; *Brookman* v. *Metcalf*, 4 Robt. 568.)

Under the principles laid down in the foregoing cases, we maintain that the plaintiff is estopped from asserting her claim to this land. The fact that after she found out that the deed in question had been placed on record, and that thereby Gilbert was held out to the world as the owner of the land, she lived in the same house with him for a period of several months, and took no steps to procure the cancellation of the deed, characterizes her as guilty of "such careless or culpable negligence as to amount to constructive fraud," upon any one who should thereafter become a bona fide purchaser of the lot, for value, from or under said Gilbert.

Knowing, as the plaintiff did, that the instrument purported to be a conveyance from herself to Gilbert, and knowing, too, that this instrument was spread at full length upon the face of the public records of the county, and that every person who examined those records must see that deed, and must conclude that Gilbert was the owner of the lot, and yet, with all this knowledge inevitably existing in her mind, taking no steps, and doing no act to counteract its effect, but silently and quietly allowing all its influence to have operation upon the mind of any one who should choose to act upon it, she must be regarded by the Court as having acquiesced in and consented to the representation of ownership thus held out, and thus have become a party to the transaction, from the effects of which she is not now at liberty to withdraw. She "kept silent when she should have opened her mouth and spoken," and she shall not now be allowed to open her mouth and speak.

By her conduct she willfully (i. e. knowingly) caused the whole world to believe that Gilbert was the owner of the lot, and induced the defendant to act upon that belief in the purchase of the lot, and she is now concluded from averring that Gilbert was not the owner. She stood by from 1861 until 1867, holding Gilbert out as the owner of the lot, and allowed the defendant to purchase the same, and pay his money therefor, upon the faith and understanding of a fact which she could at any time contradict, and she cannot now dispute that fact.

By allowing that deed to remain on record unchallenged and uncontradicted, she acted the same as though she had allowed it to be posted upon her own door post, by which she passed in and out every day, without removing it. She accepted it as correct, and held it out to the world as her act.

We do not claim that the putting of a forged deed upon record would affect the rights of an owner of land, nor that the plaintiff's right to the land in controversy would have been in the slightest degree affected by the mere recordation of the deed to Gilbert, if she never had executed it. We do not claim that the presumptive knowledge of all deeds placed on record, which the law ascribes to every citizen, would require any action on his part to overcome the effect that the recording of a forged deed might produce; but we rely upon the fact that, after the plaintiff had actual, positive knowledge that this deed was on record, she culpably and negligently allowed it to remain without challenge or controversy, and thereby induced the defendant to purchase the lot, relying upon the tacit representations that she had thus held out to him, and all others who might choose to act upon them. We concede the proposition urged by appellant—that a party cannot be divested of his land by a forged deed; but we claim, also, that a party may so act with reference to a forged deed that he will be held

to have accepted it, and will be bound by its terms.  If one, knowing that a deed has been forged, declares that it is genuine, he is precluded from disputing that fact as against one who has acted upon that declaration; and we say, further, that such declaration may be as potently made by his silence as by his express statement in words.

We maintain, moreover, that after the plaintiff had found out that this instrument was on record, and had consented that Gilbert should continue to hold the title to the premises for a period of two years, she held Gilbert out to the world as the owner of the lot, and is estopped from questioning the title of any purchaser under Gilbert, for value, and without notice of the relation which Gilbert held to the lot.

The plaintiff, by her acts and conduct, placed herself within the operation of that rule applicable in morals as well as in law: "Whenever one of two innocent parties must suffer by the act of a third, he who enabled such third person to occasion the loss must bear it." In *Young* v. *Grate*, 4 Bing. 253, it was held that when one had so negligently drawn a check, that the amount of the check was increased by forgery, and the person upon whom it was drawn had paid the larger sum, the loss must fall upon the drawer, and not the bank, inasmuch as it was through the fault of the drawer that the loss had occurred. (*Bank of U. S.* v. *Bank of Georgia*, 10 Wheat. 333; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33.)

Assuming that the plaintiff is equally innocent with the defendant, and that in any event one of the parties must bear a loss arising out of the fact that the deed to Gilbert had been placed on record without the knowledge of the plaintiff, still it is the plaintiff who must bear that loss, inasmuch as it was her act which enabled Gilbert to occasion

the loss.  It was in her power to prevent the effect which that deed and its recordation would have, and she negligently stood by and refrained from taking any step thereto. She even consented that Gilbert should hold the title for two years, and she did this, we suppose, upon the faith of his promise that he would give her back the lot.  Having ascertained that her faith was not well founded, she cannot now be allowed to set up his faithlessness as a reason why the respondent should suffer.  She brought herself within the spirit of the principle laid down by the Supreme Court of Wisconsin, cited in appellant's brief as the reason for upholding deeds fraudulently made to bona fide purchasers: "No matter what fraudulent representations induced the grantor to do these acts, an innocent third person shall not be made to bear his misfortune, or suffer for his credulity." In the present case, the defendant ought not to suffer from the fact that the plaintiff, having placed reliance upon the statement of Gilbert that he would give her back the lot, refrained from taking any steps to have the deed canceled, and found out, too late, that Gilbert had been false to her, and had fraudulently conveyed the lot to an innocent purchaser.

The authorities cited by appellant, upon the subject of the fraudulent delivery or procurement of a deed placed in escrow, are not applicable to the present case, for the reason that the doctrine of estoppel urged by us could not possibly arise.  In all those cases, the grantee was in nowise connected with the fraud, and not aware that it had been committed until an attempt was made to enforce the fraud against him.

The principle upon which all those cases proceed is that of special agency: that one dealing with a special agent is bound to ascertain the extent of his powers, and acts at his peril if he fails to make inquiry; that when a deed is delivered by one other than the grantor, the recipient is bound

to regard the person delivering as merely a special agent, and that any act of such agent beyond his powers is utterly without authority or effect, and a transaction to which the grantor is in nowise a party. It is held, however, in some of these cases (4 Whart. 382; 32 Verm. 353), that the grantor may so act as to recognize and adopt the fraudulent act of the depositary, and thereby be bound by it.

Nor do we conceive that the authorities cited upon the subject of prior registration of a subsequent deed can have any influence in determining this case. These all proceed upon an entirely different principle of law—*i. e.*, the effect of constructive notice. That an estoppel binds privies in estate needs no further citation than Coke on Litt. 352, and the various subsequent cases in which the principle has been affixed. We do not contend that strangers are bound by or can invoke it. We maintain, however, that the appellant is not a stranger, but a privy in estate under the purchase from Gilbert, in whose power it was to say to the plaintiff that her holding Gilbert out as the owner had estopped her from asserting her claim against him.

In conclusion, we maintain that the instructions of the Court were correct; that they were authorized by the facts in the case; and that the jury were fully authorized, from the evidence presented to them, to find in favor of the conditions upon which the charge was predicated, and then applying the law, as thus laid down, to the facts so found by them, render their verdict for the defendant.

By the Court, RHODES, C. J.:

In June, 1859, the plaintiff was the owner of the premises in controversy. The defendant Collins produced a deed of the premises, dated June 4th, 1859, and recorded the same month, which purported to have been executed by the plaintiff to one James A. Gilbert, and proved by a subscrib-

ing witness. He also produced a deed of the premises from Gilbert to McKenzie, dated October 16th, 1865; and a deed from McKenzie to the defendant Collins, dated April 28th, 1866—and proved that the latter paid the purchase money. The plaintiff's evidence tended to show that the deed from her to Gilbert was a forgery; and it was shown that some time after the date of the deed, but prior to 1861, she learned of its existence, and ascertained that it had been recorded. The defendant's evidence tended to prove that Collins, at the time of his purchase, had no knowledge that the plaintiff claimed that the deed from her to Gilbert was a forgery. This action was commenced in 1867.

The question presented for decision arises on the instructions. The Court laid down this rule of law: That if the plaintiff became aware that the alleged deed from her to Gilbert was of record within about one year from the time it was recorded; and if Gilbert returned to this State in 1861 and boarded with her for a time; and if during that time she was aware of the existence and recordation of that deed; and if she took no steps to have the deed set aside and annulled, then, if the defendant Collins, in 1866, purchased the property for a valuable consideration, relying upon the genuineness of the purported deed from the plaintiff to Gilbert, without any knowledge that she claimed that the deed had been forged, the defendant is entitled to recover. The reason assigned is, that as she took no steps to have the deed annulled, she thereby permitted the parties claiming under it to deal with the property as their own; and that as the defendant purchased the property under these circumstances, the plaintiff is estopped to say that the alleged deed is not her deed.

It will be assumed, for the purposes of the argument, that the deed is a forgery. The circumstance that, during a portion of the time, Gibert was within, and during another portion of the time was without, the State, may be dis-

carded; for the plaintiff could readily have commenced her action against him in either case. The case does not show that the plaintiff knew of the respective sales of the property by Gilbert and his vendee, or that either of them intended to effect a sale, until after the respective conveyances had been executed. The length of time intervening between the notice to the plaintiff of the recordation of the deed, and the purchase of the property by the defendant, is not material to the question. It is not relied on as extinguishing the plaintiff's title by the operation of the statute of limitations. If the plaintiff is estopped to set up her title because the defendant purchased the property five years after the plaintiff knew that the deed was of record— she not having taken any steps during that time to attack the deed—then the delay of one year or one month would afford the defendant the same advantage. The proposition advanced in the instructions, when stripped of accidental and immaterial circumstances is, that if the defendant purchased the property and paid the consideration without any notice that the deed in question was a forgery, and after the plaintiff knew that the deed was of record, and before she had taken any steps to have it annulled, she is estopped to allege that it is not her deed.

The cases which lay down the familiar doctrine—that one who stands by, and purposely or negligently suffers his property to be disposed of by another, is estopped to assert his title to the property—have no application here, for the plaintiff did not "stand by" while Gilbert or his vendee was selling her property. The provisions of the Registry Act do not support the proposition of the defendant, for no such result is dictated by the Act. The defendant's position, however, would be the same as that which is now taken, had he seen the deed in Gilbert's hands, instead of the record of the deed. No authorities are cited by the defendant which directly sustain his position.

As neither the forged deed nor either of the subsequent deeds affected the plaintiff's title, she must recover upon her legal title, unless the defendant has made out a good equitable defense. Was it not incumbent on him to have pleaded his equitable defense—the matter of estoppel *in pais*, relied upon by him? The question is not discussed by counsel, and it will not be necessary to decide it in this case.

Could it be shown to be the duty of the owner of property, whenever another person asserts title to such property, or is apparently the owner of it, to proceed at once to vindicate his title and destroy the apparent title in such other person, there would be but little difficulty in holding that his neglect so to do, could be relied upon as an estoppel by a purchaser from such person, in good faith and for a valuable consideration. If such were the rule, there would be no difficulty in finding cases in point. Among the innumerable cases, in which the owner of personal property has sought to recover the possession from a person who had bought the property from one who had obtained the possession by a larceny or by force, no one is brought to our attention which holds that the delay of the owner in suing for the recovery of the property impaired his title. And yet, possession is prima facie evidence of title—evidence of as high an order as the record of a deed. Other illustrations might be found in cases of forged bills and notes, and forged indorsements. The owner of property is justified in relying upon his title; and he is under no obligation to proceed against all persons who may assert a hostile title, although another person might be deceived by the apparent genuineness of such hostile title. We have never heard it asserted that it was incumbent on the person who has acquired title to lands by adverse possession, to commence an action to quiet his title against the person whose title had been extinguished by the adverse possession, though the title of the

latter appeared of record to be the true title. In the case at bar, it cannot be said that the plaintiff, by any act or neglect, induced the purchase by the defendant. It was not her duty, if her own interests did not require it, to take the necessary steps to have the deed to Gilbert annulled. It is true that a purchaser from him, relying on the record, might be injured, but he could readily protect himself by exacting from his vendor the necessary covenants.

Judgment reversed and cause remanded for a new trial.