Filed 10/22/21  U.S. Bank Trust, N.A. v. Tran CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| U.S. BANK TRUST, N.A., as Trustee, etc.,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>LAN TRAN et al.,<br><br>        Defendants and Respondents. | B307390<br>(Los Angeles County<br> Super. Ct. No.<br> LC106464)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 1, 2021, be modified as follows:

At the end of the Discussion section's last paragraph on page 12, after the citation to *Trout v. Taylor*, add the following footnote, designated footnote 7:

**7** Respondents' petition for rehearing cites the trial court's finding that Bank and Quality had a duty to disavow the fraudulent TDUS purportedly recorded by Bradley McNair, their putative "agent" and "employee" or "be bound by his fraudulent conduct."  McNair had not worked for Quality for over five years, and was not Bank's agent or Quality's employee.  Respondents argue that the failure to mention or address ostensible agency and ratification is grounds for a grant of rehearing under California Rules of Court, rule 8.268

Respondents' argument is directly contrary to the holding in our opinion, which is based on settled law, that a senior lien holder owes no duty to protect a subsequent junior lien holder absent a special relationship, which does not exist in this case. The trial court's finding of such a duty is inconsistent and erroneous because it conflicts with settled law discussed in this opinion.

The opinion does not discuss ostensible agency because Bank had no duty to correct the public record when a fraudster who is not Bank's agent or employee filed a forged TDUS.  In *Meley*, *supra*, 41 Cal. at pages 675–676, the rightful owner had no duty to disavow a fraudulent deed bearing her forged signature, despite knowing for years that it sullied the public record. Bank's failure to disavow the fraudulent TDUS cannot be construed as ratification of it, absent a duty to act.  Settled law did not require Bank to act, and its inaction did not cause it to incur any liability to respondents.

There is no change in the judgment.

Respondents' petition for rehearing filed on October 14, 2021, is denied.

NOT TO BE PULISHED.

LUI, P. J.         ASHMANN-GERST, J.         CHAVEZ, J.

2

Filed 10/1/21  U.S. Bank Trust, N.A. v. Tran CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| U.S. BANK TRUST, N.A., as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>LAN TRAN et al.,<br><br>    Defendants and Respondents. | B307390<br>(Los Angeles County Super. Ct. No. LC106464) |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Virginia Keeny, Judge.  Reversed with directions.

Perkins Coie, Brien McMahon and Aaron Goldstein for Plaintiff and Appellant.

Meylan Davitt Jain Arevian & Kim and Troy H. Slome for Defendants and Respondents.

_____

This appeal concerns a fraud perpetrated upon appellant U.S. Bank, N.A. (Bank) and on respondents.[1] A forged trustee's deed upon sale (TDUS) was recorded on real property securing Bank's 2006 deed of trust (2006 DOT). Bank's agents learned of the fraudulent TDUS in 2015 but took no action. Respondents made a loan in 2016 based on the fraudulent TDUS, mistakenly believing their lien on the property had first priority.

The trial court ruled that Bank is estopped from claiming its 2006 DOT has priority over respondents' 2016 encumbrance. The court placed a duty on Bank to correct the public record to protect potential victims from third party fraudsters. Though Bank was a victim of fraud, it lost lien primacy to respondents, whom the court viewed as more innocent than Bank.

We conclude that an innocent encumbrancer has no duty to act upon learning that a wrongdoer has recorded a forged deed on property securing a mortgage loan. Rightful property owners and encumbrancers have no ongoing duty to detect and correct fraud. A party who did not create a peril is not required to protect others from the peril, absent a special relationship between them. Without such a duty, Bank cannot be found negligent and there is no basis for applying equitable estoppel. We reverse and remand with directions to enter judgment for appellant Bank.

---

[1] Bank filed suit as Trustee for LSF9 Master Participation Trust. Respondents are Lan Tran, Bassam Mustafa, Ahlam Mustafa, and Nabil Abudayeh.

## FACTS[2]

Defendant Miriam Shashikyan owns the Sherman Oaks property at issue in this appeal. She obtained a loan for $650,000 secured by the 2006 DOT. Respondents agree that Bank "is and at all times relevant was the beneficiary of the 2006 DOT."

By 2014, Shashikyan was in default on the loan. Bank's servicer, Caliber Home Loans (Caliber), appointed Quality Loan Service Corporation (Quality) as trustee to foreclose on the property. Quality recorded a notice of sale in September 2015. A public auction set for October 1 was postponed when Quality received notice that an entity claiming a junior lien on the property was in bankruptcy.

In late 2015, Quality conducted a title search and found a TDUS recorded November 4, 2015, conveying title to the property to AA Consulting & Management (AA) following a purported foreclosure sale on October 1, 2015. Bank did not record the TDUS or authorize its agents to do so.

Quality immediately knew the sale was fraudulent. It had postponed the foreclosure sale and did not prepare, execute or record a TDUS purportedly signed by Bradley McNair, who had not worked for Quality for over five years. By December 2, 2015, Quality knew someone had recorded a fraudulent TDUS on the property securing the Bank's 2006 DOT.

Quality consulted with a title company and Caliber about the fraudulent TDUS. Quality considered recording a rescission but was advised this would not provide insurable marketable title to Bank and would be ineffective because Quality did not record

---

[2] The facts are drawn primarily from the trial court's statement of decision. The court wrote that "[m]uch of the evidence presented was undisputed."

3

the TDUS in the first place. Caliber instructed Quality to proceed with judicial foreclosure. No proceeding was initiated because of the bankruptcy stay.[3]

In January 2016, Shashikyan began a loan modification plan, which became permanent in June 2016. Bank felt the modification obviated the need to foreclose on the 2006 DOT.

It is undisputed that Quality and Caliber did nothing about the fraudulent TDUS. They did not record a rescission to alert potential purchasers or encumbrancers to the rogue deed or seek to quiet title. Caliber acknowledged that the fraudulent TDUS would eventually have to be set aside but the company felt no urgency because the TDUS was "void."

On December 28, 2015, AA conveyed its purported interest in the property under the fraudulent TDUS to defendant Larisa Kirakosian. She financed the "purchase" with a $740,000 loan, then refinanced with respondents for $760,000 in October 2016.

Respondents' loan broker inspected the property and met Kirakosian, believing she was the rightful owner. He claimed no knowledge of Bank's interest in the property. The title company that prepared a report for respondents found no documents reflecting Bank's unrepaid loan and 2006 DOT encumbering the property. Had Bank filed a notice of rescission, the title officer would have stated in his report that Bank's DOT was in first position. Had respondents known Bank claimed its 2006 DOT had priority, they would not have funded a loan to Kirakosian.

---

[3] The bankruptcy court lifted the automatic stay on December 30, 2015, finding that the bankruptcy petition was part of a scheme to defraud creditors by transferring ownership of the secured property without Bank's consent or court approval.

4

In 2017, Shashikyan defaulted on her payments to Bank. The 2006 DOT was referred to foreclosure. Caliber checked title and learned that AA transferred title to Kirakosian, who obtained loans secured by the property.

Kirakosian defaulted on her loan from respondents, who began foreclosure and recorded a notice of trustee's sale in July 2017. On August 17, 2017, Kirakosian recorded a grant deed gifting the property for no consideration to Miriam Shashikyan and Tigran Shashikyan.

## PROCEDURAL HISTORY

In November 2017, Bank filed suit against respondents seeking declaratory relief, cancellation of instruments, an equitable lien, and to quiet title.[4] Bank moved for summary judgment, arguing that the fraudulent 2015 TDUS and respondents' 2016 deed of trust were void *ab initio*. The court denied the motion. It agreed that fraud had occurred and the TDUS was void *ab initio* as a document forged by a person without authority. However, it ruled that there was a triable issue of fact as to whether Bank had a duty to warn prospective encumbrancers like respondents.

## TRIAL AND JUDGMENT

In its statement of decision following a bench trial, the court wrote, "there is no dispute that the TDUS was forged; hence, it is *void ab initio*." It acknowledged that a void deed cannot pass valid title and all transactions based upon it, including encumbrances, are a nullity. Nevertheless, it invoked equity to extinguish Bank's lien priority.

---

[4] Named defendants included Shashikyan, her son Tigran, and Kirakosian. They did not answer and defaults were entered against them. They did not appeal.

5

The court found respondents "had no knowledge that the TDUS was fraudulent. There was nothing on the face of the TDUS which would alert anyone that it was fraudulent. Nothing had been recorded by [Bank] to put the public on notice that the TDUS purportedly recorded by an officer of [Quality] was bogus."

Though Bank and respondents were victims of fraud, the court found Bank culpable for its negligent failure to act once the fraudulent TDUS was brought to its attention in December 2015. Bank could have recorded a notice of rescission or other document to reflect that Quality did not conduct a trustee's sale, to put third parties on notice of the fraud. The court concluded that Bank is estopped to assert that its 2006 DOT is senior in right and priority to respondents' 2016 trust deed.

The court found "uncontroverted evidence" that the Shashikyans participated in Kirakosian's fraud, which estops them from denying the liens asserted by Bank and respondents.

## DISCUSSION

Bank does not challenge the court's findings of fact, which were largely undisputed. When decisive facts are undisputed, the issue on appeal becomes a question of law subject to de novo review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801; *J. Arthur Properties, II, LLC v. City of San Jose* (2018) 21 Cal.App.5th 480, 489 [de novo review in equitable estoppel case].)

The question is: As the undisputed beneficiary of a valid deed of trust, is Bank subject to equitable estoppel for failing to correct public records after discovering a fraudulent TDUS on the chain of title to the encumbered property? The answer is "no." Bank had no duty to take action to protect strangers who might be deceived by a wrongdoer's fraud.

6

The doctrine of equitable estoppel is codified in California, since 1872. (*Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488–489.) The statute reads, "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.)

Estoppel may arise from silence as well as from words or conduct; however, this occurs only where there is a *duty* to act or speak. (*People v. Ocean Shore Railroad* (1948) 32 Cal.2d 406, 421–422; *Elliano v. Assurance Co. of America* (1970) 3 Cal.App.3d 446, 451.) As we shall see, Bank had no duty to act or speak.

Division Three of this district, in *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881 (*WFG*), forbade the use of equitable estoppel in a fraud scheme akin to the one we have here, holding that a lender holding a first trust deed has no duty to act to remove subsequent fraudulent deeds. The *WFG* opinion is directly on point.

In *WFG,* a "seller" conveyed property to a buyer who obtained a mortgage loan. "As it turned out, the seller did not own the property because the recorded trustee's deed upon sale that appeared to convey title to the seller was forged." (*WFG, supra,* 51 Cal.App.5th at p. 884.) The defrauded lender sued the senior encumbrancer, Wells Fargo, alleging that it negligently failed to rescind the forged TDUS to protect third parties from being defrauded. Wells Fargo prevailed on summary judgment, asserting it had no legal obligation to monitor title or take affirmative steps to rid public records of improperly recorded documents. (*Ibid.*)

7

The court affirmed the judgment for Wells Fargo. It wrote, " 'A deed is void if the grantor's signature is forged.' " The forgery passes no title. This applies to purchasers *and* encumbrancers. (*WFG, supra,* 51 Cal.App.5th at p. 890.) WFG's deed of trust was derived from a forged TDUS. Because the entire transaction was fraudulent, neither the purported property purchaser nor WFG as its lender obtained a valid interest in the property. (*Ibid.*; *Gioscio v. Lautenschlager* (1937) 23 Cal.App.2d 616, 619–920 [a "forged deed is absolutely void, and even in the case of a person claiming in good faith thereunder, is inoperative, either to divest the purported grantor's title or to vest any right or title in the grantee or claimant [citations], and being a void deed it could not operate as an estoppel [citation], nor would the fact that it was duly recorded create an estoppel"].)

The court in *WFG* addressed whether Wells Fargo was estopped from disputing the superiority of WFG's trust deed because WFG was innocent and Wells Fargo had the best chance of preventing loss.[5] WFG asserted that there was a triable issue regarding the bank's awareness of the forged deed and failure to act to correct public records. (*WFG, supra,* 51 Cal.App.5th at p. 892.) The court wrote that the party urging application of equitable estoppel or Civil Code section 3543 must show that the other party "was, at a minimum, negligent." Negligence requires breach of a duty. The existence of a duty is a question of law. (*WFG*, at pp. 892–893.)

---

[5] WFG cited Civil Code section 3543: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." Civil Code section 3543 is " 'basically an estoppel theory.' " (*South Beverly Wilshire Jewelry & Loan v. Superior Court* (2004) 121 Cal.App.4th 74, 81.)

The court concluded that Wells Fargo had no duty to correct public records even if it "had actual knowledge of the forged deed." (*WFG, supra,* 51 Cal.App.5th at p. 893.) No statute or case states that a property owner or trust deed beneficiary "has an ongoing duty to monitor public records to detect, and correct, a fraudulent or erroneous recording." (*Ibid.*)

The absence of a duty to remove known fraudulent deeds from public records is a principle of long standing. Our Supreme Court held 150 years ago that a rightful owner "is justified in relying upon his title; and he is under no obligation to proceed against all persons who may assert a hostile title, although another person might be deceived by the apparent genuineness of such hostile title." (*Meley v. Collins* (1871) 41 Cal. 663, 678 (*Meley*).) *Meley* has not been repudiated and cannot be "replaced" by intermediate appellate court opinions, contrary to the trial court's view. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *WFG, supra,* 51 Cal.App.5th at p. 894 [*Meley* is not "obsolete" and age "does not constitute a valid ground to disregard it"].)

In *Meley,* the plaintiff *knew* by 1860 that a forged deed was recorded on her property. She did nothing to correct the public record before Collins "purchased" the property in 1866, based on the forged deed. (*Meley, supra,* 41 Cal. at pp. 675–676.) Because Ms. Meley did not authorize the forgery, she was not estopped to assert her valid interest against a person deceived by it. The court wrote, "[I]t cannot be said that the plaintiff, by any act or neglect, induced the purchase by the defendant. It was not her duty, if her own interests did not require it, to take the necessary steps to have the [fraudulent] deed to [the forger] annulled. It is true that a purchaser from him, relying on the record, might be

9

injured, but he could readily protect himself by exacting from his vendor the necessary covenants." (*Id*. at p. 679.)

The rule announced in *Meley* applies to encumbrancers whose loans are based on forged deeds. In *Bryce v. O'Brien* (1936) 5 Cal.2d 615, 616, the court wrote, "[T]he mere fact that an encumbrancer acted in good faith in dealing with persons who apparently held the legal title is not in itself a sufficient basis for relief." Encumbrancers victimized by forged deeds can protect themselves with title insurance. (*Wutzke v. Bill Reid Painting Serv.* (1984) 151 Cal.App.3d 36, 44, fn. 5.)

A fundamental tenet of law—and the main impediment to asserting estoppel here—is that "there is generally no duty to protect others from the conduct of third parties." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 627 (*Regents*).) "This general rule . . . 'derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter.' " (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 214 (*Brown*).) The law punishes " 'active misconduct working positive injury to others,' " not passive failure " 'to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant.' " (*Id*. at pp. 214–215.)

As described by our Supreme Court, "[E]ach person has a duty to act with reasonable care under the circumstances. [Citations.] However, 'one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.' [Citation.] 'A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.' " (*Regents, supra,* 4 Cal.5th at

10

p. 619.)  "A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct.' " (*Brown, supra,* 11 Cal.5th at p. 216.)

The court in *WFG* concluded that there "is no evidence of a relationship, special or otherwise, between Wells Fargo and plaintiff." (*WFG, supra,* 51 Cal.App.5th at p. 893.)  Wells Fargo did not cause the peril; a forger caused peril with a fraudulent TDUS.  Thus, "estoppel does not apply to Wells Fargo because it had no duty to protect plaintiff from the consequence of relying on a forged deed." (*Id.* at p. 894.)  In so holding, the court rejected WFG's contention that the law imposes an affirmative duty on lien holders to protect their interest in avoiding loss and to suffer the consequences of their inaction.  (*Ibid.*)

The framework set forth by our Supreme Court and applied in *WFG* guides us here.  Bank did not create a peril nor was Bank complicit in a fraudulent scheme.[6]  Bank has no legal duty to

---

[6] Cases cited by respondents and the trial court are inapposite because the party being estopped was complicit in fraud.  (See, e.g. *Crittenden v. McCloud* (1951) 106 Cal.App.2d 42 [estoppel applies when a wife forged her husband's signature on a deed while he was in prison; he ratified the forgery by accepting a share of the proceeds]; *Merry v. Garibaldi* (1941) 48 Cal.App.2d 397 [family members forged a deed of trust, then hid the fraud from the lender; they were estopped from challenging the deed]; *Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740 [owners allowed their brokers to convey their property to a fraudster].)  The property owners in the cited cases played a part in fraudulent dealings.  By contrast, Bank was uninvolved in any fraud.

11

protect others who might be injured by a fraudster. There is no special relationship between Bank and respondents giving respondents a right to expect Bank's protection, nor does Bank have an ability to control fraudsters.

Bank did not have a "duty to disavow" the TDUS because Quality did not prepare, execute, or record it. Bank cannot be bound by the acts of miscreants who had no relationship with Bank. Nor did Bank ratify the misconduct. Respondents argue that "[v]oluntary retention of benefits with knowledge of the unauthorized nature of the act constitutes ratification." Bank did not receive, let alone retain, benefits from the fraudulent TDUS. Ignoring the fraud was not ratification of it.

In short, Bank had no duty to act. Bank is not estopped from denying the validity of the fraudulent TDUS, which is void *ab initio*, as are all subsequent transactions based on the void TDUS. Bank's 2006 DOT has priority. Respondents "must seek their recourse against the fraudulent defendants who occasioned the loss." (*Trout v. Taylor* (1934) 220 Cal. 652, 657.)

# DISPOSITION

The judgment is reversed. The case is remanded with directions to the trial court to enter judgment for appellant U.S. Bank, as Trustee for LSF9 Master Participation Trust. Appellant is entitled to recover its costs on appeal from respondents.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.


13