[No. 19592.   Department One.—March 11, 1896.]

## JOSEPH YOCH, RESPONDENT, v. HOME MUTUAL INSURANCE COMPANY, APPELLANT.

FIRE INSURANCE — INSURANCE UPON STOCK OF MERCHANDISE — PRINTED CONDITION AS TO GASOLINE—EVIDENCE—GASOLINE SOLD AS PART OF STOCK.—Where a policy of insurance against loss by fire covered, in writing, a stock of merchandise "such as is usually kept in a country store," and a printed condition in the policy rendered it void, "any custom of trade or manufacture to the contrary notwithstanding," if gasoline should be kept, used, or allowed upon the premises, "unless otherwise provided by agreement indorsed herein, or added hereto," evidence is admissible to show that gasoline is one of the articles of merchandise usually kept in a country store, and that the insured was in the habit of selling it at retail as part of his stock of merchandise, and it properly follows from such proof that gasoline was part of the subject of insurance, and that the insured did not violate the policy by keeping it in stock.

ID.—CONSTRUCTION OF POLICY—WRITING CONTROLS PRINTED PARTS—UNCERTAINTY.—A policy of fire insurance is to be interpreted like any other contract, so as to give effect to the mutual intention of the parties, and when it is partly written and partly printed, the written parts control the printed parts, and in case of repugnancy between the two, the printed parts must be disregarded; and the contract is to be explained by reference to the circumstances under which it was made, and in case of uncertainty is to be interpreted most strongly against the party who caused the uncertainty to exist.

ID.—PRESUMED KNOWLEDGE OF INSURER.—When the fire insurance company agreed to insure a stock of merchandise "such as is usually kept in country stores," it must be presumed to have known the character of merchandise usually kept in country stores, and that gasoline was one of those articles, and that its policy covered all such merchandise.

ID. — JUDICIAL NOTICE — EVIDENCE—PROOF OF CIRCUMSTANCES — AID OF INTERPRETATION.—The court has no judicial knowledge of the character of merchandise usually kept in country stores, and evidence is proper upon that point to enable the court, in interpreting the language of the policy, to understand the matter to which it relates, and the circumstances under which it was made.

ID.—MISREPRESENTATION—CAPACITY OF BUILDING—STATEMENT OF AGENT
—INSTRUCTION.—When the insurance policy provided that it should be
void if the insured has concealed or misrepresented any material fact or cir-
cumstance concerning the insurance, or the subject thereof, and the writ-
ten application states that the building to be insured contained less than
fifteen rooms, and the proof showed that it contained more than twenty
rooms, but also showed that the statement in the application was written
therein by the insurance agent upon information obtained at his own
instance, and that the applicant signed it without reading it, and with-
out knowledge that the statement had been made, an instruction is
proper that if the applicant made a written representation that the
building contained less than fifteen rooms, they should find for the de-
fendant, but if they should find that the facts contained in the applica-
tion respecting the number of rooms were obtained by the defendant
from another source, and that the applicant personally made no repre-
sentation in the matter, and signed the application without knowing
what it contained as to the number of rooms, it did not constitute a de-
fense.

ID. — SIGNING INSTRUMENT WITHOUT READING IT—INAPPLICABLE RULE.
The rule that one who signs an instrument which contains terms of
obligation upon himself is not absolved from such obligation by show-
ing that he signed the instrument without reading it, has no application
where the instrument signed contains no words of obligation, and the
clause invoked against the signer does not purport to be a statement
made by him, or in answer to a question put to him.

ID. — POLICY NOT REFERRING TO APPLICATION — EXTRINSIC EVIDENCE —
KNOWLEDGE OF APPLICANT.—Where the policy of insurance does not
refer to the application, or incorporate its contents into the conditions
of the policy, and it is sought by extrinsic evidence to connect the two
instruments, and make the contents of the one dependent upon the con-
tents of the other, the evidence should be very clear that the statements
in the application relied on to defeat the action upon its policy was made
by the applicant, and that at the time of making them the applicant
knew that they were to form the basis of the policy to be issued to him.

APPEAL from a judgment of the Superior Court of
Orange County and from an order denying a new trial.
J. W. TOWNER, Judge.

The facts are stated in the opinion of the court.

*Van Ness & Redman,* for Appellant.

The policy was avoided by keeping gasoline on the
premises.   (Civ. Code, secs. 1641, 1652, 2611, 2612;
*Cerf* v. *Home Ins. Co.,* 44 Cal. 320; 13 Am. Dec. 165;
*Commercial Ins. Co.* v. *Mehlman,* 48 Ill. 313; 95 Am.
Dec. 543; *Beer* v. *Insurance Co.,* 39 Ohio St. 109; *Lan-
caster Fire Ins. Co.* v. *Lenheim,* 89 Pa. St. 497; 33 Am.

Rep. 778, and note; *Cobb* v. *Insurance Co.*, 17 Kan. 492; *Steinbach* v. *Insurance Co.*, 13 Wall. 183.)  The policy was avoided by the misrepresentation of plaintiff as to the number of rooms of the house insured.  (Civ. Code, secs. 2565, 2611; *Ryan* v. *Springfield Ins. Co.*, 46 Wis. 671; May on Insurance, 2d ed., sec. 184, p. 218; *Stockton etc. Works* v. *Glen's Falls Ins. Co.*, 98 Cal. 557; *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519; *Richardson* v. *Maine Ins. Co.*, 46 Me. 394; 74 Am. Dec. 459; *Sun Fire Office* v. *Wich* (Col. App.), 39 Pac. Rep. 587; *Graham* v. *Fireman's Ins. Co.*, 87 N. Y. 69; 41 Am. Rep. 349; *Ryan* v. *World Mut. Life Ins. Co.*, 41 Conn. 168; 19 Am. Rep. 490; *Lewis* v. *Phœnix Mut. Life Ins. Co.*, 39 Conn. 100; Phillips on Insurance, sec. 337; Flanders on Insurance, 327; *Carpenter* v. *American Ins. Co.*, 1 Story, 57; *Continental Ins. Co.* v. *Kasey*, 25 Gratt. 268; 18 Am. Rep. 681.)

*Victor Montgomery*, and *William T. Kendrick*, for Respondent.

Gasoline was insured like other merchandise, it being usually kept in country stores.  (Civ. Code, secs. 1441, 1643, 1652; Wood on Fire Insurance, 2d ed., secs. 62, 206, p. 491; *Pindar* v. *Kings County Ins. Co.*, 36 N. Y. 648; 93 Am. Dec. 544; *Franklin Fire Ins. Co.* v. *Updegraff*, 43 Pa. St. 353; *Elliott* v. *Hamilton Mut. Ins. Co.*, 13 Gray, 139; *Reynolds* v. *Commerce etc. Ins. Co.*, 47 N. Y. 597.) In filling out the printed form of application, Freeman acted for the company, and his act in writing down a false statement without Brooks' knowledge would not avoid the policy, even though Brooks did sign the application without reading it.  (*Continental Ins. Co.* v. *Pearce*, 39 Kan. 396; 7 Am. St. Rep. 557; *McComb* v. *Council Bluff Ins. Co.*, 83 Iowa, 247; *Germania Life Ins. Co.* v. *Lunkenheimer*, 127 Ind. 536; *Follette* v. *United States etc. Assn.*, 107 N. C. 240; 22 Am. St. Rep. 878; *Wheaton* v. *North British Ins. Co.*, 76 Cal. 415; 9 Am. St. Rep. 216; *Beebe* v. *Ohio Fire Ins. Co.*, 93 Mich. 514; 32 Am. St. Rep. 519; *Hartford Fire Ins. Co.* v. *Josey* (Tex.

Civ. App.), 25 S. W. Rep. 685; *Burke* v. *Bours*, 92 Cal. 108; *Insurance Co. of Pennsylvania* v. *O'Connell*, 34 Ill. App. 357; *Arff* v. *Star Fire Ins. Co.*, 125 N. Y. 57; 21 Am. St. Rep. 721; *Dwelling House Ins. Co.* v. *Brodie*, 52 Ark. 11; *National Bank of D. O. Mills* v. *Union Ins. Co.*, 88 Cal. 504; 22 Am. St. Rep. 324; *Wheaton* v. *North British etc. Ins. Co.*, *supra*.) It was proper for plaintiff to ask Brooks if he was aware that the words "less than fifteen rooms" were in the application when he signed it. (*Menk* v. *Home Mut. Ins. Co.*, 76 Cal. 50; 9 Am. St. Rep. 158; *Beebe* v. *Ohio Fire Ins. Co.*, *supra*.)

HARRISON, J.—The defendant issued its policy of insurance against fire to Mrs. W. H. Brooks, the assignor of the plaintiff, in the sum of four thousand dollars, upon a frame building occupied as a country store, and also upon household furniture and the stock of merchandise, "such as is usually kept in country stores," while contained in said building. Before the expiration of the policy the insured property was totally destroyed, and the present action is brought to recover for the loss thereby sustained. The defendant alleged as grounds of defense that the insured kept for sale and allowed gasoline upon the premises in violation of the terms and conditions of the policy, and that in her written application for the policy she made a material misrepresentation in reference to the building to be insured. The cause was tried by a jury and a verdict rendered in favor of the plaintiff. From the judgment entered thereon, and an order denying a new trial, the defendant has appealed.

The policy was made out upon a printed form in which, after the agreement of insurance, there were printed certain conditions to be observed by the insured, and certain limitations upon the liability of the insurer. In the insurance part of the policy the defendant insured Mrs. Brooks for the term of one year against all direct loss or damage by fire, "except as hereinafter provided"; and intermediate this part of the policy and

the printed conditions and limitations was written with pen and ink the description of the property upon which the insurance was made.   One of these printed conditions was as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon or added thereto, shall be void . . . . if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above-described premises benzine, benzole, gasoline, Greek fire, etc." Testimony was given at the trial tending to show that gasoline is one of the articles of merchandise usually kept in country stores, but that it is customary to keep it in a room or building by itself.   It was also shown that during the month prior to the fire the insured would in the daytime bring small quantities of gasoline —one or two cans—from a building on another lot, which was used for storing it, into a room within the insured building and adjacent to the store, for the purpose of selling it at retail to her customers.   Upon this evidence the defendant requested the court to instruct the jury: "If from the evidence you find that during the period between the delivery to plaintiff of the policy of insurance in this action sued on and the fire, gasoline was at any time for several days kept for sale in the building described in the policy, or in any part of said building, your verdict should be for the defendant." The court refused this instruction, but told the jury: "If you find from the evidence in this case that gasoline was, during all or any portion of said time between the issuance of said policy and the said fire, an article of merchandise usually kept in country stores, then and in such case the fact that the insured did keep for sale or allow gasoline, if she did, either by herself or agent, allowing or keeping such article on the insured premises, that is habitually, is no defense to this action." It is urged by the appellant that in giving this instruction, and also in refusing to give the one asked by it, the court erred.

A contract of insurance is to be interpreted by the

same rules as is any other contract. It must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable. If it is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; the whole contract is to be taken together; when it is partly written and partly printed, the written parts control the printed parts, and, if there is any repugnancy between the two, the printed part must be disregarded; it may be explained by reference to the circumstances under which it was made; in cases of uncertainty it is to be interpreted most strongly against the party who caused the uncertainty to exist. (Civ. Code, secs. 1636–54.) Applying these rules to the contract in the present case, it must be held that it was the intention of the defendant to insure gasoline, if it was an article usually kept in country stores, and that, if such was its intention, it was no violation of the policy for the insured to keep gasoline upon the premises as a part of the stock of merchandise. When the defendant agreed to insure a stock of merchandise, "such as is usually kept in country stores," it must be presumed to have known the character of the merchandise which is usually kept in country stores, and that gasoline was one of these articles, and, consequently, that its policy covered all such merchandise. (*Harper* v. *Albany Mut. Ins. Co.*, 17 N. Y. 194; *Pindar* v. *Kings County Ins. Co.*, 36 N. Y. 648; 93 Am. Dec. 544.) The court would have no judicial knowledge of the character of merchandise which is usually kept in country stores, and it was therefore competent to offer evidence upon that point, for the purpose of enabling it, when interpreting the language of the policy, to understand the matter to which it related and the circumstances under which it was made. (*Elliott* v. *Hamilton etc. Ins. Co.*, 13 Gray, 139; *Whitmarsh* v. *Conway Fire Ins. Co.*, 16 Gray, 359; 77 Am. Dec. 414; *Archer* v. *Merchants' etc. Ins. Co.*, 43 Mo. 434; *Maril* v. *Connecticut Fire Ins. Co.*, 23 S. E. Rep. 463;

*Fraim* v. *National Fire Ins. Co.*, 32 Atl. Rep. 613; Wood on Insurance, sec. 64; May on Insurance, sec. 239.) When it was shown that gasoline is one of the articles which is usually kept in country stores, the court correctly held that it was a part of the subject of the insurance, and that the insured did not violate the policy by keeping it in stock. The defendant, when it issued the policy in question, knew the character of a country store, and that Mrs. Brooks kept it for the purpose of retailing to her customers all of the articles kept by her, and that the gasoline which she kept was to be disposed of by retail in the same way as the other portion of her stock. To give to the policy the construction now claimed by the defendant would be to hold that, although it agreed with her to insure all the stock she usually kept in her store, yet if she continued to keep that stock she forfeited all rights under the policy. The clause in the policy above quoted, and which is relied on by the appellant, cannot be construed as having this effect. The qualification therein which excepts the policy from becoming void, viz., " unless otherwise provided by agreement indorsed hereon," is found in the policy itself. The subject matter of the risk—the stock of merchandise "such as is usually kept in country stores"—was written on the policy by the insurer, and, as the defendant must be deemed to have intended thereby to insure all such articles as are usually kept in a country store, it must be held that this was an " agreement indorsed" upon the policy, which removed the exemption from liability that would otherwise have existed. (*Niagara Fire Ins. Co.* v. *De Graff*, 12 Mich. 124.) If there be any repugnance between the written phrase "such as is usually kept in country stores" and the printed clause "any usage or custom of trade or manufacture to the contrary notwithstanding," the former controls the latter, as being the more deliberate expression of the contracting parties. (*Fraim* v. *National Ins. Co.*, *supra;* Civ. Code, sec. 1651.)

Counsel for appellant has cited the case of *Lancaster*

*Fire Ins. Co.* v. *Lenheim,* 89 Pa. St. 497, 33 Am. Rep. 778, in support of his contention; but this case seems to stand by itself. Mr. Freeman, in his note to the case (33 Am. Rep. 778), says that the case "is utterly opposed to the decisions in all the other states, and that it is quite difficult to reconcile it with previous decisions in the same state." A subsequent case in the same state (*Fraim* v. *National Fire Ins. Co., supra*), appears to be at variance with the rule in the Lenheim case. It may also be observed that the opinion of the court in the Lenheim case rested materially upon the fact that in the policy then before it the condition exempting the insurer from liability for loss where turpentine was kept, was "in immediate connection" with the clause by which the property specified was insured, "except as hereinafter provided," whereas, in the present case, the words "except as hereinafter provided" are in direct proximity to the words "loss or damage by fire" against which the insurance is made, and may be regarded as a limitation upon the causes of fire against which the insurance is made rather than as a qualification of the contract of insurance. In subsequent portions of the policy there are certain causes of loss for which the insurer expressly declares that it will not, under any circumstances, be liable, and it is more reasonable to construe these as the matter referred to by the phrase "except as hereinafter provided," than those provisions in which it is declared that in certain contingencies the policy shall be "void."

The policy sued on contains the following provision: "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof." It is alleged in the answer that the policy was issued upon the written application of the assured, in which it was stated that the building to be insured contained less than fifteen rooms, whereas, in fact, it contained twenty rooms; and that the materiality of this representation consisted in the fact that the rate of premium for the risk assumed was greater for a

building with twenty rooms than it was for a building with fifteen rooms.

It was sufficiently shown at the trial that the building contained more than twenty rooms, but it was also shown that the statement in the application that there were less than fifteen rooms was written therein by the agent of the defendant from information which he had obtained at his own instance, and without any direction on the part of the insured, from one Dungan, the carpenter who had built the house, and it was not shown that either the assured or her husband had made any statements or representations to the agent in reference thereto.    The defendant offered in evidence a document signed by Mr. Brooks, which is claimed to be the application.    This document is indorsed, " Daily report of policy issued for the Home Mutual Insurance Company. Instructions to agents."    The face of the policy is headed "Questions," with the following direction, evidently intended for the agent of the defendant, viz., "By having the following questions so fully answered that the company can get a clear idea of the risk, and can verify rates, the agent will avoid much unnecessary correspondence."    Under this are various printed questions, numbered consecutively to 25, and beneath these printed questions there was written upon a blank line on this printed page: " 26.  Less than fifteen rooms."  The agent of the defendant testified that, before he presented this document to Mr. Brooks for signature, he had written these words in the application from information which he had obtained from Dungan, and he did not testify that he made any inquiry of Mr. Brooks concerning the number of rooms in the house; Mr. Brooks testified that when the application was presented to him for his signature he signed it without reading it, and that when he signed it he had no knowledge that these words were there.    It does not clearly appear whether the matter referred to in these words was the subject of a question which was intended to be put to Mr. Brooks, and to which no answer was written in the application, or

whether the words constitute a statement written by the agent of the defendant for the information of his principal. It is quite as consistent with the evidence on this point that the jury should have found that these words were written by the agent for the information of the company, as that they were an answer to any question put to Mr. Brooks by the agent. In the line numbered 24, the questions, "Have you personally examined the risk?" and "Do you recommend it?" are evidently questions which were to be answered by the agent, and he testified that the answer to the next question, "Has the risk been recently rejected?" to which the answer "No" is written, was not discussed by him with Mr. Brooks.

The court instructed the jury in substance that if Mr. Brooks, in applying for the policy, made a written representation that the building contained less than fifteen rooms, they should find for the defendant, but, if they should find that the facts contained in the application respecting the number of rooms were obtained by the defendant from Dungan, and from the diagram or plans furnished by him, and that Brooks made no representation personally in the matter, but signed the application without knowing what it contained as to the number of rooms, it did not constitute a defense. This instruction properly directed the jury in their deliberations upon their verdict, and their verdict thereunder is justified by the evidence. Whether Mr. Brooks made any representations to the agent concerning the number of rooms in the house was to be determined upon a direct conflict of evidence, and, if the jury believed that he did not, his signing the application with the ambiguous phrase, "less than fifteen rooms," without knowing that it was there or the purpose for which it had been inserted, cannot be construed as a written representation by him that the building contained less than fifteen rooms. The rule that one who signs an instrument which contains terms of obligation upon himself is not absolved from such obligation by showing that he signed the instrument without reading it, has no application in a case

like the present, where the instrument signed contains no words of obligation, and the clause invoked against the signer does not purport to be a statement by him, or in answer to a question put to him. The policy sued on does not refer to this application, or in any way incorporate its contents into the conditions upon which the contract of insurance is made, but the appellant sought by extrinsic evidence to connect the two instruments, and make the one dependent upon the contents of the other. In such a case the evidence should be very clear that the statements in the application relied on to defeat the action were made by the applicant, and that at the time of making them the applicant knew that they were to form the basis of the policy to be issued to him. (*Dunbar* v. *Phœnix Ins. Co.*, 72 Wis. 492; *Schwarzbach* v. *Protective Union*, 25 W. Va. 663; 52 Am. Rep. 227; *Combs* v. *Hannibal etc. Ins. Co.*, 43 Mo. 148; 97 Am. Dec. 383; *Rowley* v. *Empire Ins.* Co., 36 N. Y. 550; May on Insurance, sec. 144, et seq.)

Certain rulings of the court at the trial were excepted to by the appellant, but we are of the opinion that no error was committed in these rulings. The question asked of Freeman, in whose handwriting was the statement, "less than fifteen rooms," was subsequently stated by him to be in his own handwriting. The question whether Brooks stated to him that there was less than fifteen rooms in the building was clearly leading, and was properly excluded upon that objection. Whether Brooks made such a statement was a material point of inquiry, and it would have been competent for the defendant to ask of Freeman whether any statement was made by him on that subject, and, if so, what it was, but the defendant omitted to make such inquiry. Equally proper was it for the plaintiff to show by Brooks that he did not make such statement, and that at the time he signed the application he was not aware that the statement was there. The only objection to these questions was that they were irrelevant and immaterial, and this objection was properly overruled.

The judgment and order are affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank.