[Civ. No. 666.   Third Appellate District.—January 26, 1910.]

## PACIFIC UNION CLUB, Respondent, v. COMMERCIAL UNION ASSURANCE COMPANY, Appellant.

FIRE INSURANCE—EXCEPTION IN POLICY—LOSS DIRECTLY OR INDIRECTLY CAUSED BY EARTHQUAKE—CONSTRUCTION—LOSS "BY FIRE" SO CAUSED.—A policy of fire insurance to plaintiff for twelve months against all loss by fire, with certain exceptions, including one that the company "shall not be held liable for loss caused directly or indirectly by . . . earthquake," is to be construed as excepting loss "by fire" caused directly or indirectly by earthquake, and not loss so caused by earthquake alone. Such exception is to be regarded as a limitation upon the causes of loss by fire, rather than a qualification of the contract of insurance; and there is to be read into the exception clause the words "by fire."

ID.—ACTION UPON CONTRACT—RULE OF DAMAGES FOR BREACH—REASONABLE ANTICIPATION OF PARTIES.—An action upon the policy of insurance is an action upon contract, and the rule of damages for breach of a contract applies, to the exclusion of the rule in cases of torts, limiting the recovery for such breach of contract to such damages only as may reasonably be supposed to have been within the contemplation of the parties, when the contract was executed, as the probable result of the breach. No remote damages can be allowed in such action.

ID.—DISTINCT RULE AS TO TORTS—PROXIMATE CAUSE—ANTICIPATION IMMATERIAL.—The rule of damages, on the other hand, in cases of torts is distinct, that the injured person may recover all damages proximately caused by the injury whether they could have been anticipated or not.

ID.—APPLICABILITY OF CONTRACT RULE.—The rule in cases of action upon contract applies equally where the plaintiff seeks to recover upon a covenant in the contract, and where the defendant is seeking to evade liability under the contract.

ID.—UNTENABLE DEFENSE TO POLICY UNDER EARTHQUAKE CLAUSE—
BREAKING OF WATER-MAINS—PREVENTION OF EXTINCTION OF FIRE.
Averments by way of defense to the policy under the earthquake
exception, that the earthquake broke the water-mains and the water
so escaped that the fire department of San Francisco had no water
to extinguish the fire which on the following day caused the loss
of the insured premises, are insufficient to show that the earthquake
was, in legal contemplation, the direct or indirect cause of the
loss by fire to the plaintiff, and disclose no defense to the action
on the policy.

ID.—EXCEPTIONS CONSTRUED AGAINST INSURER AND IN FAVOR OF IN-
SURED.—Where words used in the policy leave its meaning as to
exceptions in doubt, the exceptions must be construed most strongly
against the insurer and liberally in favor of the insured.

ID.—EARTHQUAKE AS AN EXCEPTED PERIL—ORIGIN OF FIRE—PLEAD-
INGS.—The earthquake as an excepted peril cannot be regarded as
the cause of the fire where concededly it is not by the pleadings con-
nected in any way with starting it.

ID.—LOSS BY DESTRUCTION OF WATER SUPPLY NOT CONTEMPLATED.—The
loss by destruction of the water supply by earthquake could not
reasonably have been contemplated by the parties as the result of
the breach when the policy was issued, nor as being a possible in-
strumentality in starting the fire which caused the loss to the
plaintiff.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

T. C. Van Ness, and Otto Irving Wise, for Appellant.

Pillsbury, Madison & Sutro, for Respondent.

CHIPMAN, P. J.—Action on fire insurance policy issued
by defendant upon plaintiff's property situated in the city of
San Francisco.   A demurrer to the amended answer was sus-
tained and, defendant declining to further amend, judgment
passed for plaintiff in the sum of $1,765, from which defend-
ant appeals.   The fire which is alleged to have destroyed
plaintiff's property occurred April 19, 1906, the day fol-
lowing the earthquake of April 18th of that year.

The company insured the plaintiff for the term of twelve
months "against all direct loss or damage by fire except as

hereinafter provided,'' and among other exceptions was the
following: ''This company shall not be liable for loss caused
directly or indirectly by invasion, earthquake, riot, civil war
or commotion. . . . '' Basing its defense upon this excep-
tion, it is alleged in the answer as follows:

''Defendant alleges that in and by the policy of insurance
in this action sued upon it was provided, and by and between
the plaintiff and the defendant stipulated and agreed, that
the defendant company should not be liable for loss caused
directly or indirectly by earthquake; and defendant alleges
that on the 18th day of April, 1906, the City of San Fran-
cisco was visited by a severe earthquake shock between the
hours of five and six o'clock a. m., and by other and similar
shocks following said first mentioned shock; that on the said
18th day of April, 1906, and at the time of the happening
of said earthquake shock and of the fires hereinafter referred
to following thereupon, there was in said City of San Fran-
cisco a fire department fully and sufficiently equipped with
fire-engine and hose and other proper and sufficient appurte-
nances for the extinguishing of fires in said city, and there
was up to the time of the first of said shocks a water system
in use in said city, with water mains, pipes and hydrants
throughout said city and in and along the streets thereof with
an abundant supply of water for the extinguishment of fires
and for the extinguishing of all of the fires following upon
said earthquake shocks, including those immediately caused
thereby and other fires resulting therefrom, and all other
fires occurring upon said 18th day of April, 1906, and de-
fendant alleges that all of said fires, and each thereof, could
and in the usual and ordinary course of events would have
been extinguished if said water supply had been available at
the time of the breaking out of said fires, and each thereof,
and thereafter during said 18th day of April, 1906, but
defendant alleges the fact to be that the said earthquake
shocks, or some one or more thereof, broke the mains and
piping through which said supply of water was brought to
and into said City of San Francisco, and shut off said supply
of water from said city and from the portion of said city
wherein the property described in the complaint was situate,
and wherein the fire by which said property was destroyed
had its origin, and that by reason of the breaking of said
pipes and the shutting off of the water the said fire depart-

ment was without water to play upon said fires and upon said last mentioned fire, by reason whereof said fires and said last mentioned fire spread throughout said city and said last mentioned fire reached to said property of the plaintiff and destroyed said property, and defendant alleges that said fire would not have spread and said property would not have been destroyed and said loss would not have resulted if said water supply had not been cut off as in this amended answer set forth.''

Assuming, as we must, under the admissions of the demurrer, that defendant could have proven that the cutting off of the water supply caused the loss, but for which no loss would have occurred, the sole question is: Was the loss in legal contemplation caused either directly or indirectly by the excepted peril, earthquake?

Respondent states that the theory upon which the trial court held the amended answer to be insufficient was that it sought to make the ''absence of an extrinsic saving power,'' namely, the water supply, cut off by earthquake, the cause of the loss. It is appellant's contention that ''where, as here, there is independently of the first antecedent cause (the lack of water) another cause (the earthquake) but for which such first antecedent cause of the immediate cause (the fire) would not have been operative in bringing about through such immediate cause the final result, and but for which such final result would not have occurred, then, in that case, the independent cause (in this case the earthquake) must, in legal contemplation, be considered the efficient proximate cause to which the result is attributable.''

In simple phrase, as we understand the contention, the earthquake broke the water mains and deprived the city of water to fight the fire and the fire subsequently found its way to plaintiff's property and destroyed it and hence the earthquake became ''the efficient proximate cause to which the result is attributable.'' Appellant seeks to support this view by quite a number of adjudged cases of most of which *McAffee* v. *Crofford*, 13 How. (U. S.) 447, is a typical example. Plaintiffs in error, assisted by others, carried off and frightened away certain slaves who were working for defendant in error on his plantation. By reason of the forced absence of these slaves defendant suffered the loss of much cordwood, through flood, and also damage to and loss of his

crops by intrusion of cattle and hogs. The case went to the supreme court and it was there held, affirming the verdict of the jury for defendant in error, that the taking and frightening away of the slaves, the agency through which the damage complained of would have been obviated, could in law have been considered the cause of the losses suffered and that whether such was or was not the fact was a question for the jury. The application is thus made: The slaves were the saving agency which, if used in the ordinary and expected way, would have averted the injury, as here the water system and water supply would have obviated the injury had it not been cut off, and the plaintiffs in error were related to that case as the earthquake is to the case here. These are cases of recovery based upon the tortious acts of the persons sued.

Other cases are cited where companies were held liable for fire losses for breach of their contract to have water available to extinguish fires. In *New York Express Co.* v. *Traders' Ins. Co.*, 132 Mass. 377, [42 Am. Rep. 440], the court said: "So far as the question what constitutes proximate cause is concerned, the same considerations apply equally in actions of contract as in actions of tort." In that case the insurance was against loss by fire. The vessel in which the goods were lost met with a collision and was sunk. "With the collision fire instantaneously broke out," but the fire did not reach the goods which were lost wholly from the sinking of the vessel. The fire, however, so disabled the engine that the pumps could not be operated, and but for this the water flowing into the breach made by the collision could have been pumped out and the vessel driven into shallow water, and also but for which water could have been pumped and the fire extinguished. The court said: "If means and appliances were at hand by which that result (the loss) could have been avoided, and the intervention of a new agency, namely, that of fire, prevented their use, then the fire was the proximate and immediate cause of the loss. It added a new element of destruction which rendered it impossible to control or prevent the consequences which would naturally follow from the collision." It was in this connection that the court stated the rule as to what constitutes proximate cause. It may be doubted whether the fire as an antecedent cause in that case may be likened to the earthquake in the present case, for the

fire and collision were nearly, if not in fact, coincident and the effect of the fire was shown to have been so immediate and direct as to differentiate the case from this case in which the alleged antecedent cause preceded the immediate cause many hours. However, the exception here is, as we think, loss by fire caused directly or indirectly by earthquake, and not loss directly or indirectly by earthquake alone. In *Yoch v. Home Mutual Ins. Co.,* 111 Cal. 503, 510, [44 Pac. 189, 190], it was decided that the words, in a policy of fire insurance, "except as hereinafter provided," in connection with the words "loss or damage by fire," against which the insurance is made, "may be regarded as a limitation upon the causes of fire against which the insurance is made rather than as a qualification of the contract of insurance." And in *Williamsburgh City Fire Ins. Co.* v. *Willard,* 164 Fed. 404, [90 C. C. A. 392], the court held that inasmuch as the insurance was against direct loss or damage by fire, occasioned by or through earthquake, there must be read into the exception clause the words "by fire," making the policy cover "loss or damage by fire occasioned by or through any volcano, earthquake, hurricane, etc., for it must be that the sole purpose of the exception is to specify certain losses by fire not insured against." We cannot accept the rule to be in this state as stated in the Massachusetts case, *supra.* The action in the present case is upon contract and does not sound in tort, and the rule of proximate cause in actions for breach of contract and not for torts is to be invoked to determine whether under the contract the excepted peril directly or indirectly induced the happening of the peril insured against.

The distinction is clearly pointed out in *Hunt Bros. Co.* v. *San Lorenzo Water Co.,* 150 Cal. 51, 56, [87 Pac. 1093, 1095], as follows: "It is the well-settled rule of damages for any breach of contract that the damages that can be recovered for a breach are only such as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of a breach. Other damages are too remote. In this lies the distinction between damages for tort, the rule as to tort being that the injured person may recover for all detriment proximately caused thereby 'whether it could have been anticipated or not.'" (Civ. Code, sec. 3333. See, also, *Westwater* v. *Grace*

*Church,* 140 Cal. 339, [73 Pac. 1055]; *Travelers Ins. Co.* v. *Melick,* 65 Fed. 184.) We see no reason why the rule should not equally apply where the plaintiff seeks to recover under a covenant in the contract and where the defendant seeks to evade liability under the contract. The following cases illustrate the application of the rule where consequential damages were sought by the plaintiff but were held to be too remote: *Friend Terry Lumber Co.* v. *Miller,* 67 Cal. 464, [8 Pac. 40], failure of a vendor·to deliver building material and piles; *Pendleton* v. *Cline,* 85 Cal. 142, [24 Pac. 659], failure to make an abstract on time; *Elder* v. *Kutner,* 97 Cal. 490, [32 Pac. 563], impairment of credit resulting in inability to sell land or contract a loan; *Kenyon* v. *Western Mine Tel. Co.,* 100 Cal. 454, [35 Pac. 75], failure to be appointed to an office because a telegram had not been promptly delivered. Here we have a policy indemnifying against "loss by fire" with the exception where the "loss," or, as we think was contemplated, "loss by fire," was "caused directly or indirectly by earthquake." The averments are that the earthquake broke the water-mains, the water so escaped that the fire department of the city had no water with which to extinguish the fire occurring the next day. It seems to us clear that the averments fail to show that the earthquake was, in legal contemplation, the cause of the fire.

In the case of *Commercial Union Assurance Company,* plaintiff in error, v. *Pacific Union Club,* defendant in error, 169 Fed. 776, the same parties as here, and where the pleadings were not essentially different from the pleadings here, the United States circuit court for the ninth circuit, in a decision rendered May 3, 1909, reached the same conclusion as the trial court in the present case. The opinion is by Mr. Justice Ross and is printed in respondent's brief. We quote: "The insurance was against all direct loss or damage by fire, with the exception that for such loss, that is to say, loss by fire 'caused directly or indirectly by earthquake' the company should not be liable." (The court took the same view of the contract as did the court in *Williamsburgh City Fire Ins. Co.* v. *Willard,* 164 Fed. 404, [90 C. C. A. 392], and read into the exception clause the words "by fire.") "What did the parties mean by this express language of their contract? Is it at all reasonable to suppose that where the company stipu-

lated for exemption for loss by fire 'caused directly or indirectly by earthquake' it meant that it should not be liable for any loss or damage by fire which could be prevented by the use of the water supply of the city in the event its use be prevented by the breaking of the water mains by an earthquake shock? As well might it also be said that the company meant that it should not be liable for any loss or damage by fire which could be prevented by the use of the fire department of the city of San Francisco in the event its use be prevented by the destruction of its apparatus, or the killing or disabling of its men or horses by an earthquake shock or shocks. . . . No question of water supply appears to have entered into the contract in question. It contains no clause imposing any obligation on the insurer in respect to water, or specifying any consequences to result from a lack of such supply by the city or any other third party. . . . We think the court below was right in its ruling that the matters set out in the amended answer constitutes no defense to the action.'' Suppose the effect of the earthquake had been such as to render the streets impassable for the fire-engines, although the water-mains were not disturbed; or that, as suggested by respondent, a ''riot'' (which is one of the excepted perils mentioned in the policy) of such violence had occurred that the firemen were called out to assist the police in quelling it, and, while so engaged, a fire happened which could not be but would have been extinguished but for the riot, and the fire therefore spread and destroyed the insured property. It certainly could not be contended that the excepted perils would include such a case. Or, suppose by the ''invasion'' of an enemy (and invasion is one of the excepted perils) the water-mains leading to the city had been cut and a fire ensued which could not be extinguished for lack of water, could it be said that such an occurrence practically worked a suspension of this and all similar policies and would shield the insurer? The insurance being against ''loss by fire'' when ''caused directly or indirectly by invasion,'' it is unreasonable to suppose that the policies contemplated that an enemy might cut the water-mains; that a fire might occur thereafter which the fire department could not extinguish because the water supply had been cut off. Such consequence is too remote to be deemed to have been contemplated by the parties.

Reduced to its simplest form, the contention of appellant is that because the earthquake destroyed the water-mains, thus preventing the water to be used to extinguish the fire, the earthquake was the cause of "the absence of an extrinsic saving force" which could not be applied to extinguish the fire. We cannot, however, regard the earthquake as the indirect cause of the fire loss. Respondent cites, as illustrative, *Ionides* v. *Universal Marine Ins. Co.*, 14 Com. B., N. S. 259, a case of marine insurance. A ship with a cargo of coffee was insured against perils of the sea, but warranted free from all consequences of hostilities, went ashore. The light at Cape Hatteras, existing there for many years, had been extinguished by the rebel authorities to impede and harass the United States shipping, and in consequence thereof, the captain of the ship, intending to round the cape and then to steer due north, being out of his reckoning and believing that he had passed the cape, ran the ship ashore at Hatteras Inlet, where she was finally lost. The question was whether the loss was a peril of the sea, or whether because of the absence of the light which had been extinguished by the enemy and the insurer thus brought within the warranty. The court held, except as to certain of the cargo which was saved, that the cargo was lost by peril of the sea. After stating that in the construction of the contract of insurance, the proximate or immediate cause of the loss alone is that to which we can look, as the established law in Europe and America, Byles, J., in his opinion, said: "Then, what were the three things which combined to cause the loss—assuming that the captain would have seen the light if there, and so would have been warned in time to save the vessel? First, the original meritorious cause (and in popular language the cause of the loss), was, the captain's being out of his reckoning. He was some fifty miles to the westward of his course, without knowing it. The absence of the light was, as I before observed, merely the absence of an extrinsic saving power. Could that be said to be the cause of the ship's destruction? Suppose a man throws himself into the Serpentine, and the means of rescuing him are not at hand, and he is drowned. Could it be said in that case that the man was drowned because of the absence of the saving power? Apply that here. The absence of the light at Cape Hatteras was but the absence of a warn-

ing, leaving the proximate and immediate cause of the loss, the miscalculation of the captain, which is plainly a loss by the perils of the sea." The case of *Brown* v. *St. Nicholas Ins. Co.*, 61 N. Y. 332, was one of marine insurance upon the cargo of a canal boat, the policy containing a clause that if the boat was "prevented or detained by ice, or the closing of navigation, from terminating the trip," the policy should cease. The boat was proceeding down the Delaware river, on its way to the Chesapeake and Delaware canals, where a storm separated her from the towing tugs and she was driven ashore, where ice formed around her so that the tugs could not reach her and she became frozen in and so remained until a thaw came. A wind then arose, and through it and the ice she was driven upon another boat, broke in two and sank. The court held that the proximate cause of the loss was the original stress of the weather which drove the boat ashore, and that the fact that the ice formed and prevented the tugs from reaching her did not bring the insurers within the exception in its policy. Referring to the Ionides case, the court said: "The failure of the tugs to reach the boat was, in the words of Byles, J., the 'absence of an extrinsic saving power.'" We are unable to discover any force in appellant's distinction which it seeks to draw, between *rescuing* the subject of the loss from the peril and *preventing* the operation of the destructive peril upon the subject of the loss. Respondent cites, in further illustration of its contention, *Northwest Transp. Co.* v. *Boston Marine Ins. Co.*, 41 Fed. 793. In that case a vessel was stranded in a fog and before she could be got off, a storm arose and, to save the cargo and ship, the master scuttled her, causing the loss in question. It was held that the proximate cause of the loss, arising from the scuttling, was the storm and not the stranding and that the loss was within the policy. It was urged by the answer in that case that the stranding should be regarded as the proximate or efficient cause of the disaster which befell the vessel, because such stranding never ceased to operate until the loss was complete—because it created the necessity for the scuttling—and should therefore be regarded as the *causa causans* of the loss, for the reason that if the vessel had not been stranded she would probably have sustained no injury from the storm, or would not have been compelled to resort to scuttling as a

means of safety.   The opinion is instructive.   The court said:
"A correct application of the doctrine of proximate and re-
mote cause establishes, in my opinion, the proposition that
the storm rather than the stranding should be considered the
proximate efficient cause, and the loss resulting from the
voluntary scuttling of the vessel. . . . The storm which cre-
ated the necessity for scuttling the vessel was in no sense set
in operation by the stranding, but was a distinct, independ-
ent, and intervening cause, nearest to and therefore properly
chargeable with the disaster."

Appellant makes the point that the words "directly or in-
directly" mean "proximately or remotely," and therefore
appellant is not liable for a loss of which an earthquake is the
remote cause.   Each of the parties refers to certain provisions
of the policy to support the contention of each that the true
meaning of the words used is to be found in the policy itself.
It would not be profitable to explore the cases in order to find
just when "direct" is held to mean "proximate" or "in-
direct" to mean "remote."   In *Williamsburgh City Fire Ins.
Co.* v. *Willard,* 164 Fed. 404, [90 C. C. A. 392], the court
held, as we have seen, that the excepted peril, earthquake, as
well as the other excepted perils grouped with it, was intended
to be such only when operating as a direct or indirect force
in causing or starting the fire (see *Yoch* v. *Home Mutual Ins.
Co.,* 111 Cal. 503, [44 Pac. 189] ; and that it was unnecessary
to determine whether or not the loss was proximately caused
by earthquake, since it was not the direct cause of the plain-
tiff's loss.

If we resort to other parts of the policy to determine the
meaning of the words used in the clause describing the ex-
cepted perils, we should only find ourselves in doubt in which
case the well-settled rule would require us to construe the
words in favor of the insured.   Besides, there is this further
rule as quoted in *Berliner* v. *Travelers' Ins. Co.,* 121 Cal. 461.
[66 Am. St. Rep. 49, 53 Pac. 920], from *Equitable Ins. Co.*
v. *Osborn,* 90 Ala. 201, 207, [9 South. 869] : "Exceptions of
this kind are construed most strongly against the insurer, and
liberally in favor of the insured.   This is now the settled rule
for construing all kinds of insurance policies, rendered neces-
sary, especially in modern times, to circumvent the ingenuity

of insurance companies in so framing contracts of this kind as to make exceptions unfairly devour the whole policy.''

We are unwilling to accept as sound the argument of appellant which may be said to rest primarily upon the assumption that earthquake, as an excepted peril, must be regarded as the cause of the fire, although concededly it is not by the pleadings in any way connected with starting it. We are quite satisfied to follow the rule laid down in *Hunt Bros. Co. v, San Lorenzo Water Co.*, 150 Cal. 51, [87 Pac. 1093], namely, ''that the damages that can be recovered for a breach of contract are only such as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of the breach.'' We cannot bring ourselves to believe that either one of the parties to the contract here ever dreamed, much less contemplated, that earthquake might cut off the water supply of the city and if this should happen that this and all like policies furnished no promise of indemnity from loss by fire occurring during such dearth of water.

A number of cases have quite recently been tried in the United States circuit court for the United States—Judge Deitrich presiding—in which the insurance companies made successful defense where they were able to show that the fire was directly traceable to the earthquake. In others they failed where, as here, the defense was that the earthquake indirectly caused the loss by cutting off the water supply, but had nothing to do with starting the fire. Numerous other cases have been tried in our state courts as well as in the United States courts and this construction of the policies has held good in all of them. We have found but little difficulty in reaching the same conclusion.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.