### ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. KING.

#### No. 5559.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1947.

F. Dean Rainey and C. F. Haynsworth, Jr., both of Greenville, S. C. (Haynsworth & Haynsworth and Rainey and Fant, all of Greenville, S. C., on the brief), for appellant.

Miller C. Foster and Jesse W. Boyd, both of Spartanburg, S. C. (Johnson, Johnson & Foster, of Spartanburg, S. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The scope of an aviation exclusion clause in a contract of life insurance is the question raised by this appeal. The insured, Lieutenant Drew L. King, a resident of South Carolina, was a flight observer serving with the Civil Air Patrol. He met his death on February 9, 1943, and this suit was instituted by the beneficiary of the policy, the appellee here, against the insurance company, appellant, for the full amount of the policy. The lower court awarded judgment to the plaintiff on stipulated facts. The insurance company has duly appealed.

At eight o'clock in the morning of the day mentioned the insured and a pilot left their base for a routine coastal patrol flight off the shores of North Carolina. The patrol was made in a land based plane along with another plane of like make. About an hour and one-half after take-off, the plane in which the insured was riding developed serious engine trouble. This emergency forced the pilot to bring the plane down at sea some thirty miles from the coast. Apparently the descent was sufficiently controlled to permit putting the plane on the water in a normal landing position. The men managed to inflate their life jackets and free themselves from the plane before it sank a few minutes later.

There is no question that both men were alive at this time as they were seen to signal the other plane. A subsequent examination confirmed the belief that the men were not injured by the impact of the plane striking the water. Meanwhile the occupants of the second plane, after dropping an emergency kit, circled the distressed men and tried to establish radio contact with the base. At Noon, which was two and one-half hours later, no help had arrived and the second plane, because of a shortage of gasoline, was forced to return to the base. The men in the water were alive at that time. When a Navy boat finally arrived at two in the afternoon, both men were dead.

A Naval physician (not an eyewitness to the events) issued a statement of death after examining the bodies, which contained the diagnosis: "Drowning as result of exposure in the water after failure of airplane motor."

The contract of insurance, which the insured had made in South Carolina with the

appellant insurance company, contained the following clause: "This order shall not be liable to any person for any benefit for death resulting from participation, as a passenger or otherwise, in aviation or aeronautics, (except as a fare paying passenger in a licensed aircraft operated on a regular schedule)."

Although South Carolina law would be controlling, the highest court in that State has never considered the precise question here involved. Accordingly the lower court, in an effort to apply South Carolina law, resorted to some general maxims of insurance law that have been invoked on occasions by South Carolina courts. By stressing particularly the insured's uninjured physical dis-engagement from the airplane, and coupling this with the rule of construction that ambiguous or doubtful clauses must be resolved against an insurer, the District Court reached the conclusion that the exclusion clause of the policy was not applicable. We are unable to agree with that conclusion either on reason or authority.

Aside from the many authorities on this question (to which we will advert later in this opinion), we think the exclusion clause clearly comprehends the very situation that here developed. Any other conclusion must ignore the plain meaning and presence of the word "resulting." To give that word the effect that it must have in everyday speech (and as understood by laymen as well as lawyers) obviates the necessity for technical and artificial rules of construction. In our view of the case it is as undesirable as it is unnecessary to borrow from the law of torts the nuances and subtleties which attend such a phrase as "proximate cause" and to attempt an application of these nuances and subtleties to the facts of the instant case. There is little, if anything, to construe. In undertaking an aerial flight over the ocean in a land-based plane, man must reckon with the perils of the sea which are as imminent and real as the unrelenting force of gravity. Just as flight over the land brings forth the danger of violent collision with the earth, we have the dangers of the sea in over-water flight. That men may remain alive for varying periods of time before suc-

cumbing does not change the picture. We think it a rather violent fiction to say that death, under such circumstances, comes from accidental drowning. Common knowledge and experience fairly shout of the dangers of shock, exposure and drowning when a flight is taken over water in the winter time in a land based plane.

Out of the abundance of wisdom that comes with hind-sight it might have been better to have also inserted the words "directly or indirectly" in the exclusion clause. Actually such words were not vital here and would have added little to the force of the word "resulting."

We are asked by counsel for appellee to notice the harrowing experiences and remarkable rescue of Captain Eddie Rickenbacker. The contention is made that when a man leaves a plane under such conditions he is in a position of "potential safety," i. e., he can be saved. To pursue this somewhat ingenious argument is to invert the real question of the case. It is true that rescue, routine or fortuitous, may remove a man from peril. But it does not follow that the failure of rescue brings the peril that causes death. When the insured was in the cold waters of the Atlantic Ocean in February, he was not in a position of "potential safety." He was in imminent peril of death, unless rescue came and also came quickly. We are unable to see how, under these circumstances, death resulted in any way other than from participation in aviation.

There is more than ample authority to support this view. In Neel v. Mutual Life Ins. Co. of N.Y., 2 Cir., 131 F.2d 159, the insured, after landing his plane on the ocean, was drowned while trying to reach shore. Under a similar aviation exclusion clause, the insurer was held not liable. Judge Augustus Hand, speaking for the Court, said (131 F.2d at page 160): "The policy provides that Double Indemnity shall not be payable if death resulted 'from participation in aeronautics' and it seems quite contrary to the natural meaning of the proviso to say that Stubbs did not meet his death from 'participation in aeronautics' merely because he may not have been killed by impact upon the water. If he landed in the open sea, even though without imme-

diate injury, drowning was an almost inevitable consequence. To say that his death did not result 'from participation in aeronautics' would exclude from the proviso of the policy the most ordinary risks involved and limit the effect of the clause in an unexpected and unreasonable way. As Judge Cardoza said in Bird v. St. Paul F. & M. Ins. Co., 224 N.Y. 47, 120 N.E. 86, 87, 13 A.L.R. 875: 'General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. * * * The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of everyday forms, of speech and modes of thought must tell us when to stop. It is an act of "judgment as upon a matter of fact." ' "

This was followed in Green v. Mutual Benefit Life Ins. Co., 1 Cir., 144 F.2d 55, in which the insured, a Naval aviator, was forced to land his plane on the water and was drowned while attempting to reach his life raft. Other instructive cases are Pittman v. Lamar Life Insurance Co., 5 Cir., 17 F.2d 370; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615; and Blonski v. Banker's Life Co., 209 Wis. 5, 243 N.W. 410. Compare: Commercial Union Assurance Co. v. Pacific Union Club, 9 Cir., 169 F. 776; Pacific Union Club v. Commercial Union Assurance Co., 12 Cal.App. 503, 509, 107 P. 728; Tierney v. Occidental Life Insurance Co. of California, 89 Cal.App. 779, 265 P. 400.

Counsel for the beneficiary virtually conceded in oral argument (as indeed they must) that the Neel and Green cases, supra, are indistinguishable in principle from this case. They rely, however, on Bull v. Sun Life Assurance Co. of Canada, 7 Cir., 141 F.2d 456, certiorari denied, 323 U.S. 723, 65 S.Ct. 55, 89 L.Ed. 581. In that case the insured went down a few hundred yards from shore, after his plane was damaged by anti-aircraft fire. After the emergency landing, the insured was seen standing on the fuselage, attempting to launch a rubber boat. Other members of the crew, who had already escaped in a rubber raft dived into the water when a Japanese plane swept low to strafe the crippled American plane. An explosion was heard, the crippled plane burst into flames, and the insured was never seen again. In holding the insurer liable, the Court, by a two to one decision, emphasized the war risk of enemy fire and noted that the jury could have found this intervening force caused death. We agree with the observation in the Green case which viewed the intervening force in the Bull case as a distinguishing feature. 144 F.2d 55 at page 58.

We come, then, to the last argument of the plaintiff (appellee) which is that, irrespective of the foregoing, the South Carolina law would permit recovery in a case of this character. This phase of the argument rests primarily on the dictum in Bolt v. Life & Casualty Ins. Co. of Tennessee, 156 S.C. 117, 152 S.E. 766, 767: "* * * our court has made it the almost universal rule to construe any clause of an insurance policy against the insurer, when there existed the least doubt as to the meaning of the language employed."

We agree that this is an exceedingly broad statement. Nevertheless, in our view of the instant case, the meaning of the language employed in the policy is clear on its face. In any event, we believe that the highest court in South Carolina would not make specific application of such a generalized dictum, which, if applied to the facts here, would fly in the face of reason and the very considerable authority that has expressed the view we now follow. It would certainly not conform with accepted theories of proximate cause. See Horne v. Atlantic Coast Line R. Co., 177 S.C. 461, 181 S.E. 642.

■ Counsel for appellee, while not contending that we are bound by it, have cited a decision rendered in the Court of Common Pleas for the County of Spartanburg which allowed the same plaintiff to recover on a similar policy with another insurance company on the same statement of facts now before us. That opinion, not binding

on other South Carolina courts, is not binding on us and we cannot treat it as a final expression of South Carolina law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. While we entertain nothing but respect for that court, we must reject its view of this case for the reasons previously expressed. That opinion, it might be added, which was rendered July 29, 1946, relied on the District Court's ruling in the instant case now before us.

The case of Goethe v. New York Life Ins. Co., 183 S.C. 199, 190 S.E. 451, is urged as an instance in which terms in insurance policies should be construed according to the ordinary and usual understanding of its signification by "common people." We are unable to see how this strengthens the plaintiff's case, for our conclusion is reached by the express adoption of the rule urged by plaintiff.

We have carefully considered other cases cited by the plaintiff: McGee v. Globe Indemnity Co., 173 S.C. 380, 175 S.E. 849; Young v. Life & Casualty Ins. Co. of Tennessee, 204 S.C. 386, 29 S.E.2d 482; Myers v. Ocean Mftg. Co., 4 Cir., 99 F.2d 485; Manufacturers Accident Indemnity Co. v. Dorgan, 6 Cir., 58 F. 945, 22 L.R.A. 620, and find them inapplicable and not controlling.

The judgment of the lower court is reversed.

Reversed.