[Civ. No. 9657. Second Appellate District, Division One.—May 20, 1936.]

THE COAST MUTUAL BUILDING–LOAN ASSOCIATION (a Corporation), Respondent, v. SECURITY TITLE INSURANCE AND GUARANTEE COMPANY (a Corporation), Appellant.

George H. Woodruff, Clyde R. Burr and Leander O. Hatch for Appellant.

Clarke & Bowker, Robert M. Clarke, Gwartney & Gall, H. J. Gwartney and Herbert Gall for Respondent.

SHINN, J., *pro tem.*—Appeal by defendant from a judgment of the Superior Court of Los Angeles County, in an action upon a policy of title insurance, insuring plaintiff's title to a promissory note and trust deed as a first lien upon real property.

Plaintiff loaned the sum of $10,000 upon a promissory note secured by trust deed of real property, in connection with which transaction the defendant wrote its policy of title insurance, by which it insured plaintiff ''as the owner or owners of the indebtedness described in and secured by the mort-

gage, trust deed or other lien or encumbrance referred to in Schedule A herein, and the successor or successors in interest of said indebtedness (hereinafter called the Insured), against all damage or loss of principal, interest or other sums secured by said mortgage, trust deed or other lien or encumbrance, which the said Insured shall sustain by reason of defects in the title of the maker or makers of the said mortgage, trust deed or other lien or encumbrance securing said indebtedness existing at the date of the recording thereof, to the real property described and pledged to the payment of said indebtedness; or by reason of liens or encumbrances at said date affecting the title to said real property or the priority of said mortgage, trust deed or other lien or encumbrance; or by reason of any defect in, or invalidity of such mortgage, trust deed, or other lien or encumbrance, or any assignment thereof of record at the date of this policy; excepting only the defects, liens, encumbrances and other matters hereinafter mentioned in Schedule B, and in the Conditions and Stipulations of this Policy, which said Schedules A and B, and Conditions and Stipulations are hereby made a part of this Policy. The Company does further guarantee and covenant that said indebtedness secured as aforesaid is a first lien or charge against said real property prior and superior to all other liens and charges thereon, except as shown under said Schedule B.''

The policy further provided as follows: ''Liability of the Company: Except as otherwise shown herein by Schedule B, and subject to the terms hereof, the Company hereby insures a marketable title to the estate or interest of the Insured, as described in Schedule A, which may be an estate or interest in a mortgage, deed of trust, or other lien or indebtedness shown as an encumbrance upon the fee simple title. The Company may and will, at its own cost and expense, defend the Insured in all actions or proceedings founded (1) on a record claim of title or encumbrance prior in date and time to this Policy and hereby insured against, or (2) on a claim of invalidity or insufficiency of the records to sustain the record title as hereby insured, by reason of forgeries, copyist's errors, invalid wills, rights of after born children, false personations, deeds executed by minors and incompetent persons, rights of husband and wife, identity of persons, legal rights of parties, or other latent defects in

recorded instruments purporting to convey or create liens on land or improvements. The Company will not be liable for loss or damage by reason of transfers, encumbrances or defects recorded or created subsequent to the date hereof, or created or suffered by the insured claiming such loss or damage, or resulting in no pecuniary loss to the Insured.''

Said schedule A described the note and trust deed. Schedule B, so far as material here, read as follows: ''Showing estates, interests, defects or objections to title, and liens, charges and encumbrances, affecting said premises or the estate or interest insured, which do or may now exist, and against which the Company does not insure or agree to indemnify: . . . Rights or claims of parties in possession, or based upon overlapping improvements, or upon adverse possession of all or any portion of said property, which rights or claims are not shown by said public records.''

Plaintiff sustained losses as a result of the loan and events which followed, by reason of the following facts: the real property belonged to one Katherine Mintener, who at the time of and subsequent to said transaction was, in person and by her tenants, in actual possession of all of the real property. One Tingley, having procured her signature to a document, forged and altered the same into a grant deed of the real property to a fictitious grantee, Larry E. Ketch; he then negotiated a loan of $10,000 with the plaintiff herein and executed in the name of Ketch the note and trust deed. The deed and trust deed were recorded at the same instant, and the policy of insurance was issued simultaneously therewith. Thereafter Katherine Mintener brought an action to quiet title against the plaintiff, defendant, and others, which said action plaintiff called upon defendant to defend, which defendant declined to do. Plaintiff thereupon employed counsel to defend the action and expended therein the sum of $1220.47. The plaintiff in that action prevailed, and her title was quieted against the lien of the trust deed. In addition to the amount expended in defending the action, plaintiff suffered a loss on account of the money loaned on the trust deed, in the amount of $7,847.92, and for these aggregate amounts judgment was given in favor of plaintiff herein.

The defense is that plaintiff's loss was one which was not insured against, and in support thereof reliance is placed upon the exceptions which we have quoted from schedule B

of the policy. Defendant's position may be stated as follows: at the time the policy was issued, Katherine Mintener was in possession of the land; at that identical moment the forged deed was recorded, from which facts it is argued that the rights and claims of Katherine Mintener were not shown on the public records at the time the policy was issued, and therefore were not insured against.

The entire case turns upon the construction to be placed upon said exception in the policy. Katherine Mintener's title was, and long had been, of record. Did it cease to be shown of record, within the meaning of the policy, upon the recording of a forged deed purporting to convey the title to another? In the decision of this question we are to be guided by well-established rules relating to the construction of insurance policies. Not only the provisions of the policy as a whole, but also the exceptions to the liability of the insurer, must be construed so as to give the insured the protection which he reasonably had a right to expect, and to that end doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor.

"The courts have also announced a rule . . . to the effect that when the language employed in an insurance contract is ambiguous, or when a doubt arises in respect to the application, exceptions to, or limitations of, liability thereunder, they should be interpreted most favorably to the insured, or to the beneficiary or mortgagee to whom the loss is payable as his interest may appear. Such contracts are to be interpreted in the light of the fact that they are drawn by the insurer, and are rarely understood by the insured, to whom every rational indulgence should be given, and in whose favor the policy should be liberally construed. Where the language and terms of a policy are framed and formulated by the insurer, every ambiguity and uncertainty therein should be resolved in favor of the insured." (14 Cal. Jur., p. 445.)

The rule thus stated is supported by an unbroken line of authorities, a few of which are the following: *Pacific etc. Co.* v. *Williamsburgh etc. Co.*, 158 Cal. 367 [111 Pac. 4]; *Granger* v. *New Jersey Ins. Co.*, 108 Cal. App. 290 [291 Pac. 698]; *Narver* v. *California State Life Ins. Co.*, 211 Cal. 176 [294 Pac. 393, 71 A. L. R. 1374]; *Pacific Union Club* v. *Commer-*

*cial etc. Co.,* 12 Cal. App. 503 [107 Pac. 728]; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123]; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.,* 212 Cal. 576 [300 Pac. 34]; *Raulet* v. *Northwestern etc. Ins. Co.,* 157 Cal. 213 [107 Pac. 292].

What is meant by the phrase ''shown by said public records''? Under the construction urged by defendant, it means that when a forged deed is recorded which purports to convey away the title of the record owner, such title, or such rights and claims as the true owner may have, are no longer shown by the records. We cannot give it that construction. The rights and claims of Katherine Mintener were founded upon a complete record title. They existed and were shown of record after as well as before the recordation of the forged deed. Her title was clouded, it is true, but it was otherwise unaffected, and she had an absolute right, based upon her ownership, shown of record, to have the cloud removed. (*Meley* v. *Collins,* 41 Cal. 663 [10 Am. Rep. 279]; *Haight* v. *Vallet,* 89 Cal. 245 [26 Pac. 897, 23 Am. St. Rep. 465]; 23 R. C. L. 200.)

If she had conveyed the land, with the forged deed of record, her grantee would have taken good title—clouded, but not inadequate or defective. So it cannot be said in a true sense, or without reliance upon technical niceties of construction, that the rights and claims of Katherine Mintener were not shown of record when the policy was written. Furthermore, defendant was insuring the title, not merely certifying to the apparent state of the title. The assured was indemnified against defects in the title to the trust deed or in the title of the maker thereof to the land. A title resting upon a forged deed is most certainly defective. The policy insured against forgeries, that is to say, forged instruments, were among the defects contemplated, for the insurer undertook to defend the title of the insured against claims of invalidity ''or insufficiency of the records to sustain the record title, as hereby insured, by reason of forgeries . . . or other latent defects in recorded instruments purporting to convey or create liens on land or improvements.'' No exception was made as to forged instruments purporting to have been executed by the owner of the realty in possession at the time of the issuance of the policy. Having insured against forgeries, defendant seeks to have the court give the forged deed

the practical effect of a valid deed so as to construe an exception of the policy in such manner as to excuse defendant from liability on account of the forgery. We seriously doubt that the exception stated in the policy was ever intended to relieve the insurer of liability arising out of forgeries against owners in possession. Let us apply defendant's construction to familiar situations. It is a very common thing for an owner in possession to deed his land to a grantee who, at the time of recording the deed, procures a policy of title insurance indemnifying him against defects in the title, including forgeries. If he has been made the victim of a forgery, must he stand the loss? And if, upon acquiring title, he has given a mortgage or trust deed on the land, must the holder thereof, whose title is likewise insured as a first encumbrance, stand the loss? Undoubtedly a policy insuring against defects in the title would so exempt the insurer if the exception was stated in plain language, but it could not be given that effect if to do so required that hidden meanings and ambiguities be construed in favor of the insurer and against the insured. If the policy in question attempts to create such an exemption it does not state it in terms that would be so understood in the business world. Of this we have no doubt. That the exception in question does not relieve the insurer is not only a justifiable construction but also a more reasonable one.

It is a very common thing for real property to be in the possession of those whose rights are not disclosed by the records, and as title companies certify and insure the state of the title from the public records, it is customary for them to protect themselves against liability arising out of rights of persons in possession which are based upon unrecorded instruments. Common instances are tenancies under oral or unrecorded leases, and rights of those in possession under unrecorded contracts of purchase. Such cases clearly are contemplated by the provisions of said schedule B. Other rights are mentioned in the schedule, such as those based upon overlapping improvements or upon adverse possession. Claims such as these readily come to mind in reading the exceptions, but we do not see how it can be said that to the ordinary mind or to the minds of those who would insure under such a policy, the language we have quoted from schedule B would convey the idea that upon the recordation of

a forged deed the rights and claims of the true owner of the land would cease to be a matter of record and that the insurer would thereby become relieved of its obligation to indemnify the insured against losses arising out of the assertion of the title of the owner.

Policies of title insurance furnish no exception to the general rules of construction. As said in *Marandino* v. *Lawyers' Title Ins. Corp.,* 156 Va. 696 [159 S. E. 181]: " . . . such policies" (title insurance policies) "are subject to the rules generally applicable to contracts of insurance, among which are, that being drawn by the company doubtful questions should generally be decided in favor of the insured, and that exceptions and reservations are strictly construed." The following expression of the court in *Narver* v. *California State Life Ins. Co., supra,* is directly applicable: "The insurance company having prepared the policy and all documents used in connection with its issuance, should not be heard to put such a construction upon an ambiguity, caused by it, as will defeat the policy and take from the beneficiary the very purpose and object of the insurance, if a reasonable construction upholding the insurance can be had that does no violence to the language used and the clear intention of the parties. (*Pacific Heating & Ventilating Co.* v. *Williamsburgh etc. Co.,* 158 Cal. 367 [111 Pac. 4]; *Welsh* v. *British American Assur. Co.,* 148 Cal. 223 [82 Pac. 964, 113 Am. St. Rep. 223, 7 Ann. Cas. 396]. . . . ) . . . In the case before us it would have been a simple matter for the appellant to have used such language in the several documents constituting the contract of insurance, so that there would have been no question of its meaning. The company did not do so, and it cannot complain because the trial court, following the usual rule of construction, resolved such ambiguities against it and in favor of the insured."

The construction given the contract by the trial court is consistent with the intent of the parties and the general scheme of the policy, and is fully sustained by the authorities.

It is unnecessary to state other reasons why the exception of the policy should not be given the technical construction contended for by the defendant.

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 16, 1936.