NATIONAL CASUALTY COMPANY, Plaintiff/Counter–Defendant/Appellee,

Carolina Casualty Insurance Company, Counter–Defendant/Appellee,

and

Great American Casualty Insurance Company, Counter–Defendant,

v.

COASTAL DEVELOPMENT SERVICES FOUNDATION, d/b/a Westside Regional Center and Michael Danneker, Defendants/Counter–Claimants/Appellants.

No. 03–57231.
D.C. No. CV–03–00848–CJC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 2005.

Decided March 20, 2006.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Lisa A. Wilson, Selman Breitman, LLP, San Francisco, CA, for Plaintiff/Counter–Defendant/Appellee.

G. Andrew Lundberg, Latham & Watkins, LLP, Los Angeles, CA, Jonathan B. Cole, Karen K. Coffin, Nemecek & Cole, Sherman Oaks, CA, for Defendants/Counter–Claimants/Appellants.

Before KLEINFELD and FISHER, Circuit Judges, and SHADUR,* District Judge.

## MEMORANDUM**

Coastal Development purchased a directors and officers insurance policy from National Casualty and an excess liability insurance policy from Carolina Casualty, both with a one-year term from October 23, 2001 to October 23, 2002. In January 2002, Capitol People First and others filed a class action suit against Coastal Development and others in a California state court. The class action sought a number of equitable remedies, but no monetary damages apart from the plaintiffs' attorney's fees and costs.

National Casualty asserts that the insurance policy it issued does not indemnify Coastal Development against any plaintiff's attorney's fees and costs when a suit otherwise seeks only equitable relief. National Casualty concedes that the policy it issued does cover up to $100,000 of Coastal

---

* The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Development's costs of litigating the class action. Carolina Casualty denies it currently has any liability to pay for either the class action plaintiffs' attorney's fees and costs or Coastal Development's litigation costs because the $5 million liability coverage under the insurance policy issued by National Casualty has not yet been exhausted.

National Casualty filed a complaint for declaratory relief against Coastal Development in federal district court. Coastal Development responded with counterclaims against National Casualty and Carolina Casualty. The district court granted summary judgment in favor of both National Casualty and Carolina Casualty. We reverse.

## I.

When interpreting an insurance contract, California "[c]ourts have long applied the doctrine of reasonable expectation." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 172 n. 7 (1966).

> Not only the provisions of the [insurance] policy as a whole, but also the exceptions to the liability of the insurer, *must be construed so as to give the insured the protection which he reasonably had a right to expect*, and to that end doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor.

*Id.* (quoting *Coast Mut. Bldg.-Loan Ass'n v. Sec. Title Ins. & Guar. Co.*, 14 Cal. App.2d 225, 57 P.2d 1392, 1393 (1936)) (emphasis added in *Gray*). The California Supreme Court has

declared time and again [that] any exception to the performance of the basic underlying [insurance] obligation must be so stated as clearly to apprise the insured of its effect. Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.... This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded.

*MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1213 (2003) (internal citations and quotations omitted).[1]

The relevant portions of the insurance contract between Coastal Development and National Casualty (National Policy) are reproduced below:

## I. INSURING AGREEMENTS

. . .

### A. COVERAGE

> The Company [National Casualty] will pay on behalf of INSURED [Coastal Development, its officers, directors, legal representatives during bankruptcy and certain others] all DAMAGES which the INSURED shall be legally obligated to pay for any CLAIM(S) made against the INSURED ...

### B. DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

> With respect to the insurance afforded by this policy, the Company agrees with the INSURED that:

1. Although there is no explicit choice of law provision in the insurance policy issued by National Casualty, Endorsement No. 3 to the policy is titled "Changes–California," and a notice attached to the insurance contract is titled "Important Information for California Policyholders." Both parties assume in their briefs that California contract and insurance law are appropriate interpretive guides for the contract. We follow this assumption here.

1. The Company shall have the right and duty to defend any CLAIM made against the INSURED, including appeal thereof, seeking DAMAGES to which this insurance applies, even if the allegations of the CLAIM are groundless, false or fraudulent. . . .;

2. The . . . Company shall not be obligated to pay any DAMAGES or judgment, nor to defend any CLAIM, after the Limit of Liability [$5,000,-000] has been exhausted by payment or settlement. . . .;

3. In addition to the Limit of Liability stated in the Declarations, the Company shall pay on behalf of the INSURED all CLAIM EXPENSES incurred in any action or suit for DAMAGES brought against the INSURED alleging a WRONGFUL ACT or WRONGFUL EMPLOYMENT PRACTICE;

. . .

5. The total limit of the Company's liability hereunder for CLAIM EXPENSES incurred as a result of CLAIM(S) for covered WRONGFUL ACTS seeking non-monetary relief is $100,000 for each CLAIM. Payment by the Company of CLAIM EXPENSES under coverage provided by this endorsement reduces the policy's Limit of Liability by the amount paid, and the Company shall not be obliged to continue to defend any CLAIM(S) subject to the above stated coverage Limit of Liability after this coverage Limit of Liability has been exhausted by payment of CLAIM EXPENSES. . . .;

6. As respects to CLAIM(S) seeking DAMAGES for covered WRONGFUL ACTS that includes judgment for non-monetary relief, the Company will pay on behalf of the INSURED any CLAIM EXPENSES incurred for defending the non-monetary relief CLAIM until the CLAIM seeking DAMAGES has been settled, dismissed or adjudicated. Payment by the Company of CLAIM EXPENSES for the non-monetary relief reduces the policy's Limit of Liability by the amount paid.[2]

II. DEFINITIONS

. . .

B. CLAIM(S) means a demand or suit made upon the INSURED for DAMAGES and alleging a specific WRONGFUL ACT or WRONGFUL EMPLOYMENT PRACTICE. . . .

C. CLAIM EXPENSES means fees, costs and expenses incurred by an attorney and all other costs, charges and expenses incurred for the investigation, adjustment, settlement, arbitration, defense or appeal of a CLAIM that is covered under the terms of the policy. . . .

D. DAMAGES means a monetary judgment, award or settlement arising from a covered CLAIM, including prejudgment interest awarded against the INSURED on that part of the judgment paid by the Company and *all costs taxed against the INSURED* and any such suit and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in the court such part of such judgment as does not exceed the limit of the Company's liability thereon. . . .

(Emphasis added.)

**II.**

Section I.A requires National Casualty to pay "all DAMAGES . . . for any

---

**2.** National Policy Sections I.B.5 and I.B.6 were added by an endorsement which amended the insurance contract. The endorsement merely added these sections without otherwise changing the text of the original contract.

CLAIM(S) made against" Coastal Development, "CLAIM" being defined by Section II.B as "a demand or suit . . . for DAMAGES." Section I.B.1 obligates National "to defend any CLAIM made . . . seeking DAMAGES. . . ." Thus National's obligations to Coastal turn on whether the class action meets Section II.D's definition of "DAMAGES." Coastal contends the class action suit is "an action or suit for DAMAGES" by virtue of plaintiffs' demand for attorney's fees and costs, which Section II.D includes as "DAMAGES." National Casualty reads these items as ancillary to an award of monetary damages, not enough standing alone to convert an equitable claim into a damage claim. The language of the National Policy does not unambiguously resolve this dispute. The definitions of key terms in the National Policy are circular and ambiguous. The National Policy defines a "CLAIM [as] a demand or suit made upon the INSURED for DAMAGES." Yet "DAMAGES means a monetary judgment, award or settlement arising from a covered CLAIM." Despite this circularity, we understand National Casualty's obligations to defend Coastal Development and pay any award of plaintiffs' attorney's fees and costs to turn on whether that award would constitute "a monetary judgment, award or settlement" as set forth in Section II.D.

Section II.D's use of the phrase "including prejudgment interest . . . and all costs taxed against the INSURED" is ambiguous. The word "including" could be introducing a list of specific components of a plaintiff's recovery that are themselves a type of "DAMAGES"—as Coastal Development argues. Or it could be introducing a list of secondary, subordinate awards not meant to be considered as monetary judgments, awards or settlements—as National Casualty would read it. Either reading of "including" is objectively reasonable. *See* American Heritage College Dictionary 687 (3d ed.2000) (defining "include" as: "1. To take in as a part, an element, or a member. 2. To contain as a secondary or subordinate element. 3. To consider with or place into a group, class or total").[3] Because the definition of "DAMAGES" in the National Policy "is capable of two or more constructions, both of which are reasonable," we conclude that the policy is ambiguous with respect to that term. *MacKinnon*, 3 Cal.Rptr.3d 228, 73 P.3d at 1213.

■ "In interpreting an insurance policy we apply the general principle that doubts as to meaning must be resolved

---

**3.** The dissent relies on *MacKinnon*, 3 Cal. Rptr.3d 228, 73 P.3d at 1214, to criticize us for citing to a dictionary definition of the word "including." (Dissent at ——.) However, *MacKinnon* does not *preclude* resort to dictionaries in the course of contract interpretation, noting that "examination of various dictionary definitions of a word will no doubt be useful." *Id.* Rather, *MacKinnon* is concerned with a court making "a fortress out of a dictionary," *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945) (Hand, J., writing for the court), and instead counsels a court to "put itself in the position of a layperson and understand how he or she might reasonably interpret the [contract] language." *MacKinnon*, 3 Cal.Rptr.3d 228, 73 P.3d at 1214.

We have taken *MacKinnon*'s admonition to heart, and rather than rely exclusively on "one of the dictionary meanings of the key word[ ]," *id.*, we note that there are *various* definitions of the word "including," illustrating reasonable alternative interpretations of the coverage provided by the National Policy. A layperson reading the National Policy might reasonably interpret the phrase "all costs taxed against the INSURED" to "include" claims for attorney's fees and costs in the definition of "DAMAGES," and therefore conclude, as we do, that the class action suit filed by Capitol People First and others is covered under the National Policy as a "CLAIM" for "DAMAGES."

against the insurer," *Gray*, 54 Cal.Rptr. 104, 419 P.2d at 171, and "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language," *MacKinnon*, 3 Cal.Rptr.3d 228, 73 P.3d at 1213. We therefore conclude that a suit for equitable relief that includes a demand for attorney's fees and costs is a "CLAIM" for "DAMAGES" as those terms are defined in the National Policy. Accordingly, National Casualty has a duty not only to defend the class action suit against Coastal Development as it would other "CLAIMS" for "DAMAGES," but also to pay any of the plaintiffs' attorney's fees and costs assessed against Coastal Development as a result of the class action suit, so long as such fees and costs do not exceed the $5 million coverage limit.

National Casualty argues that interpreting the "including" clause of the DAMAGES definition as we have done would "lead to absurd results," triggering coverage any time a lawsuit is filed because there are always costs to litigation and even plaintiffs suing for equitable relief will customarily ask for attorney's fees and costs in their pleadings. National Casualty further argues that "if … a claim for attorney's fees is enough to trigger coverage, then there would be little purpose in distinguishing between monetary and non-monetary relief as the National Casualty policy plainly does." We appreciate that the National Policy purports through Sections I.B.5 and I.B.6 to distinguish between suits for monetary and non-monetary relief in the context of addressing Coastal's "CLAIM EXPENSES" (e.g., its *own* attorney's fees and costs in defending against a "CLAIM"). These two sections, added as endorsements to the original policy, do not purport to amend the definition of "DAMAGES" that addresses Coastal's exposure to a *monetary award in favor of plaintiffs*. Even if we were to read Sections I.B.5 and I.B.6 as attempting to

amend the definition of "DAMAGES," "the burden rests upon the insurer to phrase exceptions and exclusions [to insurance coverage] in clear and unmistakable language." *MacKinnon*, 3 Cal.Rptr.3d 228, 73 P.3d at 1213. The language of the contract leaves ambiguous the distinction between suits for monetary and non-monetary relief, as well as the significance of such a distinction. Under clearly established California law, such ambiguity must be resolved in favor of the insured when the insured's reading of the ambiguous language is objectively reasonable, as it is here. *See id.*

National Casualty and the dissent rely upon *Cutler–Orosi Unified Sch. Dist. v. Tulare County Sch. Dists. Liab./Prop. Self–Ins. Auth.*, 31 Cal.App.4th 617, 37 Cal.Rptr.2d 106 (1994), for the proposition that attorney's fees and costs are not considered damages under California insurance law. (Dissent at –– – ––––.) We do not read *Cutler–Orosi* to support such a categorical principle. First, depending on the language of the contract, attorney's fees and costs are sometimes construed to be damages by California courts. *See Golden Eagle Ins. Co. v. Ins. Co. of the West*, 99 Cal.App.4th 837, 851, 121 Cal.Rptr.2d 682 (2002) ("We conclude that an insured with contractual liability coverage would reasonably expect that the indemnitee's attorney fees and costs are sums the insured becomes 'legally obligated to pay as *damages* because of' covered tort claims.") (emphasis in original).

Second, although the insurance contracts in *Cutler–Orosi* and in this case both use the same phrase "all costs taxed against the insured," 31 Cal.App.4th at 624, 37 Cal.Rptr.2d 106, the phrase still has to be read in the context of the particular contract. Indeed, the *Cutler–Orosi* court expressly relied in part on the fact that the phrase appeared in "*a supple-*

*mentary payment provision* obligating the insurer to pay all costs taxed against the insured in a suit seeking damages...." *Id.* at 631, 37 Cal.Rptr.2d 106 (emphasis added). It noted that if the original insurance contract's use of "damages" had already included costs, a supplementary provision would have been totally unnecessary. *See id.* In contrast, in the National Policy the "all costs taxed against the insured" phrase was *included from the policy's inception* as part of the definition of damages. Therefore, unlike in *Cutler–Orosi*, our interpretation of the National Policy does not "render [any] supplemental payment provisions superfluous," *id.* at 631, 37 Cal.Rptr.2d 106, but rather gives effect to "the objectively reasonable expectations of the insured," *id.* at 626, 37 Cal. Rptr.2d 106, that all costs taxed against it would be treated as "DAMAGES" as defined when Coastal Development bought its policy.

We hold that Coastal Development reasonably expected that a suit for equitable relief that included exposure to a monetary award of plaintiffs' attorney's fees and costs would be covered by the National Policy as a "CLAIM" for "DAMAGES." We therefore need not consider Coastal Development's argument that the allegations in the class action complaint *could* support an award of money damages.

## III.

■ The district court ruled that Carolina Casualty "owes [Coastal Development no] duty to defend or to indemnify with regard to the lawsuit filed by 'Capitol People First' and others." However, Carolina Casualty does not argue that it has *no* obligation to defend and indemnify Coastal Development against the class action suit once the $5 million indemnity cap in the National Policy has been reached. Because this is a declaratory relief action

to determine the ongoing obligations of the insurers to the insured in the underlying class action suit, we must reach the issue of Carolina Casualty's obligations to Coastal Development under the excess liability insurance policy even if it were true, as Carolina Casualty alleges, that "CAROLINA's obligations under the CAROLINA Policy have not been (and are not likely to be) triggered." Accordingly, we reverse the district court's ruling with respect to Carolina Casualty and hold that, according to the language of the excess liability insurance policy, Carolina Casualty owes duties to Coastal Development "in conformance with the provisions" of the National Policy and such duties "attach[ ] only after the [National Policy] has been exhausted by payments of losses" totaling $5 million, which amount includes any payments of plaintiffs' attorney's fees and costs.

REVERSED and REMANDED.

KLEINFELD, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent with respect to National Casualty. The National Casualty policy is not ambiguous, the district court got it right, and its judgment should be affirmed.

The policy provides different coverages according to whether the claim is for "damages" or "non-monetary relief." The claim in the underlying litigation is for a declaratory judgment and an injunction. Those are precisely what has long been understood as "non-monetary relief." The distinction drawn by the policy would have no meaning if such traditional forms of "ancillary" relief as attorney's fees and costs are treated as converting a claim for non-monetary relief into one for damages.

The policy definition of DAMAGES could not be more clear. First, the majority's erroneous interpretation is the result

of parsing the policy in the exact manner the California Supreme Court says not to. In *MacKinnon v. Truck Insurance Exchange*,[1] the California Supreme Court states that it is "a basic fallacy," that "the meaning of policy language is to be discovered by citing one of the dictionary meanings of the key words."[2] Here, the majority, contrary to California law, uses the American Heritage College Dictionary to define "include," and, discovering multiple definitions, it finds the policy provision ambiguous.

Second, "prejudgement interest" heads the list that the majority says can be read as a list of examples of monetary awards. But prejudgment interest is not a judgment itself, it is interest on a "judgment to receive damages."[3] Not only is prejudgment interest not a stand alone monetary award, it is not even a mandatory award under the California statute.[4] Yet the majority states that it is "reasonable" to read a list headed by prejudgment interest as a list of "examples of monetary awards." The list introduced by the word "including" in the National Policy definition of DAMAGES is subject to only one interpretation: a finite list of subordinate awards that will be covered subject to a monetary judgment, award, or settlement. As such, it is not ambiguous, and the majority's interpretation of this clause is untenable.

My view is merely the ordinary reading adopted in California law. In *Cutler–Oro-*

*si USD v. Tulare County/Self Ins.*, the court held that "[a]ttorney fees ... are inconsistent with the concept of 'damages' as the term is used in its ordinary and popular sense."[5] It contrasted attorney's fees with damages because attorney's fees do "not compensate the plaintiff for" his injury, but "reimburse[ ] him for a portion of the expenses he incurred in seeking ... relief."[6] The court went on to say that interpreting the term "damages" so broadly would render limitation provisions in insurance policies, like the one in this case, meaningless.[7]

The facts in *Cutler–Orosi* are very similar to this case. In that case, the plaintiffs filed an equitable action under the Voting Rights Act that included a claim for statutory attorney's fees under 42 U.S.C. § 1988, one of the statutes used by the plaintiffs in the underlying lawsuit against Coastal Development. The insurance policy in *Cutler–Orosi* stated that the insurer would pay "all sums which the Insured shall become obligated to pay as damages" to include *"all costs taxed against the Insured."*[8] The National Casualty policy says that it will pay the "monetary judgement, award or settlement ... including ... *all costs taxed against the INSURED."* A California court found that the language in the former policy was not ambiguous and did not cover attorney's fees.[9] A California Insurance Treatise states that "[a]ttorney fee awards are not

1. *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003).

2. *Id.* at 1214.

3. Cal. Civ.Code § 3287.

4. *See McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1131 (9th Cir.2004).

5. *Cutler–Orosi USD v. Tulare Co. Self Ins.*, 31 Cal.App.4th 617, 37 Cal.Rptr.2d 106, 115 (1994).

6. *Id.* (citing *Hutto v. Finney*, 437 U.S. 678, 695, n. 24, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).

7. *Id.*

8. *Id.* at 109–10 (emphasis added).

9. *Id.* at 115.

damages" and that suits seeking injunctive relief do not seek damages.[10]

We are required to follow California law. Doing so in this case, requires us to affirm as to National Casualty.

10. I California Ins. Law Dictionary & Desk     Ref. §§ A79, D1 (2005 ed.)